WOOLMAN v. The RICHARD DOANE. See Case No. 11,765.

---

## Case No. 18,032.

### WOOLSEY v. DODGE et al.

[6 McLean, 142.] [1]

Circuit Court, D. Ohio. Oct. Term, 1854. [2]

ILLEGAL BANK TAX—COLLECTION—INJUNCTION BY STOCKHOLDER—CONSTRUCTION OF STATE STATUTES—FOLLOWING STATE DECISIONS.

1. The tax law of 1852, against banks, incorporated under the act of 1845, having been declared to be unconstitutional, it can afford no justification to the treasurer of the county in collecting the tax.

2. A citizen of Connecticut, being a stockholder, may file his bill for an injunction against the collection of the tax, making the directors of the bank defendants, which will enable the court to give relief, the same as if the directors were plaintiffs.

3. A remedy by injunction will be given where there is no adequate relief by law.

4. A continual grievance will be enjoined.

5. An action of trespass is not an adequate remedy for the bank, when its funds are annually and unlawfully abstracted.

6. The state cannot be sued. Its officer may not be responsible.

7. The credit of the bank is impaired.

8. The courts of the Union follow the rule of construction of state statutes, established by the supreme court of the state.
[Cited in Griffing v. Gibb. Case No. 5,819; Mitchell v. Lippincott, Id. 9,665.]

9. The supreme court of the United States. under the federal constitution, give the rule of construction of that instrument.

[This was a bill by John M. Woolsey against George C. Dodge and the directors of

[1] [Reported by Hon. John McLean, Circuit Justice.]
[2] [Affirmed in 18 How. (59 U. S.) 331.]

the Commercial Bank of Cleveland to enjoin the collection of a certain tax.]

Mr. Ewing, for complainant.
Mr. Spaulding, for defendants.

McLEAN, Circuit Justice. The complainant, a citizen of Connecticut, filed his bill, representing, substantially, that he is a stockholder in the Commercial Bank of Cleveland, to the amount of thirty shares of stock, which are worth forty per cent. above par, making an aggregate value of four thousand two hundred dollars; that an illegal and unconstitutional tax has been imposed on said bank exceeding eleven thousand dollars, and to the injury of the complainant more than five hundred dollars; and the bill alleges that the continuance of the tax will impair and substantially destroy the franchises of the bank. And the complainant alleges that orders have been given to the defendant who is treasurer of Cuyahoga county, to proceed to collect the tax, under the tax law of 1852, which authorizes the defendant, if the tax shall not be paid on demand on notice being given, to enter the vaults of the bank by force, and take therefrom the amount of the tax in gold and silver coin, etc. And the complainant avers if the tax be levied and paid over to the state, he is without remedy, as the state cannot be sued, and that his recourse on the treasurer would be inadequate, etc. He therefore prays that an injunction may be granted, there being no adequate remedy at law. There are many other averments in the bill which it is unnecessary to state.

The defendant demurs to the bill on the ground that there is no jurisdiction. Two positions are assumed in the argument against the jurisdiction of the court: (1) "That the charter of the bank contains a provision, that its affairs shall be managed by the directors." (2) That "upon any other hypothesis, than an abuse of the trust by the directors, a court of equity has no jurisdiction."

The authorities referred to in support of the above positions are undoubtedly law, but they are considered as having no application to the case before us. This is not a writ against the bank. No relief against it is prayed for in the bill. The directors are made parties, having an interest in the matter not hostile to the complainant, but in accordance with his interest, in order that, the directors being named on the record, the entire interest of the bank may be protected from the illegal exaction threatened. This is a common proceeding in chancery, which in its decree protects the rights of parties on the record, whether named as complainants or defendants. In 1 Story, Eq. Jur. 630, it is said, "In equity, it is sufficient that all parties in interest are before the court as plaintiffs or as defendants; and they need not, as at law, in such a case, be on opposite

sides of the record." And in 2 Story, Eq. Jur. 742, he says, "In courts of equity, persons having very different and even opposite interests, are often made parties defendants." And in Boone v. Chiles, 10 Pet. [35 U. S.] 177, the court say, "It is within the undoubted powers of a court of equity to decree between co-defendants, on evidence between plaintiffs and defendants." So in 2 Schoales & L. 712. In the case of Piatt v. Oliver [Case No. 11,116], the complainant being a citizen of Kentucky, filed his bill against Oliver and others, praying a decree against them, and also made defendants several other persons whose interests rested on the same grounds, as the rights asserted by the complainant; and the circuit court decreed, as between the parties defendants on the record, who, being citizens of Ohio, could not be made complainants, and that case being carried to the supreme court, the decree was affirmed. 3 How. [44 U. S.] 333.

No further reference to authorities on this point can be necessary. It is sustained in the reports, and in elementary treatises. Has the complainant made a case in his bill, which gives jurisdiction to the court? He alleges that he has an interest in the bank, exceeding four thousand dollars; that an illegal tax has been laid on the bank exceeding eleven thousand dollars, and so his injury more than five hundred dollars; and that the collection of the tax will impair, if not destroy the franchise of the bank. The sixtieth section of the charter is relied on as containing a contract, that the bank should not be taxed more than six per cent. upon its dividends, which tax the bank has heretofore paid, and is now ready to pay to the treasurer of state. The complainant also alleges, if the tax demanded be paid over to the defendant he would not be responsible, and if by him paid to the state, he would be without remedy, as the state cannot be sued. It has recently been held, by the supreme court of the United States, that the law under which this tax was imposed impairs the contract made by the state in the sixtieth section of the bank charter of 1845, and that the law was passed in violation of the constitution of the United States, and is consequently void.

It has been suggested, rather than argued, by the counsel in this case, that the adoption of the new constitution, which took effect the 1st day of September, 1851, contained provisions, in regard to taxation, inconsistent with the sixtieth section of the act of 1845, and that consequently, that act was modified by the constitution. I say this was rather suggested than argued, as I would not do so great an injustice to the counsel, as to suppose that any one of his learning and ability could bring himself to the conclusion that the constitution of the state is not a law of the state. It is indeed the fundamental and paramount law of the state; but it is only a law of the state, and the

constitution of the United States declares that "no state shall pass any bill of attainder, ex post facto law, or law impairing the obligation of contracts," etc., and the supreme court of the United States at its last term, having before it, by writ of error, the judgment of the supreme court of Ohio, enforcing the tax law against banks, reversed the judgment, on the ground that the tax law which imposed higher tax on the banks incorporated under the act of 1845, than six per cent. on their dividends, impaired the obligation of the contract in regard to taxation, contained in the sixtieth section of that law.

That the supreme court of the Union had jurisdiction of the case in which the above judgment was pronounced, is not controverted, and it is equally clear that the decision is final and conclusive. If indeed a state, by calling a convention, could modify or abrogate any part of the federal constitution, that great palladium of our rights would be of no value. The founders of this government were too wise and patriotic to countenance such a principle in the fundamental law of the Union. Such a power, it is believed, has never been asserted by any authority entitled to respect. In the case of Osborn v. Bank of U. S., 9 Wheat. [22 U. S.] 868, which was a case in several of its aspects similar to the one before us, the supreme court say, the act of Ohio "is repugnant to a law of the United States, made in pursuance of the constitution, and therefore void. The counsel for the appellants are too intelligent, and have too much self respect, to pretend that a void act can afford any protection to the officers who execute it." There is no axiom of the law better established than this. A void law can afford no justification to any one who acts under it; and he who shall attempt to collect the illegal tax, under the law referred to, will be a trespasser. He will proceed, it is true, under the color of law, an act standing on the statute book, but a void act. If he open the vaults of the bank by force, and abstract a portion of its specie, under a pretense of collecting the tax, he, though the treasurer of the county, will stand without justification or excuse. He has no more right to do this than any other person, who can set up no pretense of authority. And this trespass is to be repeated annually. What a spectacle! What a spectacle to a law-abiding people! Is there no preventive remedy? What stronger ground than this can be imagined for an injunction? The action of trespass comes too late. The state cannot be sued. Its officer may be insolvent. At best, such a remedy is wholly inadequate. The money of the bank is annually abstracted, its credit shaken, and for years the money may not be recovered. It would be a mockery of justice as well as of law, to say to the bank, your only remedy is by an action of trespass.

It is a settled principle in chancery, that an injunction will be granted against a sin-

gle trespass, if in its nature, it would be irremediable at law. But the case before us is a trespass to be repeated so long as the act laying the tax shall remain unrepealed. And there can be no question, that a collection of the tax after the decision of the supreme court, declaring the tax law void, will be continued until the law shall be repealed. This will in effect, not only disregard the highest judicial authority, on the question involved, in the Union; but it will nullify the constitution of the United States, which is declared to be the supreme law of the Union. This remark is not only justified but called for as two applications for injunctions have been made against the collection of the illegal tax at the present term. In the bill it is stated that orders have been given to the treasurers of the counties in which these banks are situated to proceed, under the law, to collect the tax. And this is to be done, if the tax be not paid on demand, by what, in common parlance, is called the crowbar operation. In all the bills praying for injunctions in these cases, the complainants state that the banks have offered to pay the legal tax under their charter, and are ready, at any time, to pay it.

In the Case of Osborn above stated, the supreme court say, "The circuit court of the United States have jurisdiction of a bill brought by the Bank of the United States, for the purpose of protecting the bank in the exercise of its franchises, which are threatened to be invaded, under the unconstitutional laws of a state; and as the state itself cannot, according to the eleventh amendment of the constitution, be made a party defendant to the suit, it may be maintained against the officers and agents of the state, who are entrusted with the execution of such laws." And the court further say, "In the case at bar, the tribunal established by the constitution for the purpose of deciding ultimately, in all cases of this description, had solemnly determined that a state law imposing a tax on the Bank of the United States, was unconstitutional and void, before the wrong was committed for which the suit was brought." "We think then," the court say, "there is no error in the decree of the circuit court of the district of Ohio, so far as it directs restitution" of the money taken unlawfully from the bank. The court say in effect, as stated in the synopsis of the case, "A state cannot tax the Bank of the United States, and any attempt on the part of its agents and officers to enforce the collection of such tax against the property of the bank, may be restrained by injunction from the circuit court."

It is said that the tax on the Bank of the United States was intended to destroy its franchises. The exaction on each of the two branches of that bank, was the sum of fifty thousand dollars, while the illegal tax on the Commercial Bank of Cleveland was about eleven thousand dollars. This is a difference in degree, rather than in principle. But the court say a tax on the Bank of the United States is illegal, and may be enjoined by the circuit court. Is not the tax complained of by the Commercial Bank of Cleveland illegal, and may it not be enjoined? What higher and more conclusive authority than this can be cited in favor of this remedy by injunction.

In the case of Pennsylvania v. Wheeling Bridge Co., 13 How. [54 U. S.] 567; the court say in reference to granting injunctions, "There must be such an injury, as from its nature is not susceptible of being adequately compensated by damages at law, or such as, from its continuance or permanent mischief, must occasion a constantly recurring grievance, which cannot otherwise be prevented than by an injunction." The character of the trespass threatened and complained of, is not only an annually recurring grievance, but if continued must be fatal to the bank. The tax, and the penalty for non-payment, together with the costs of collection, would impair the credit and destroy the usefulness of any bank.

It has been stated that the mode of giving jurisdiction in this case is merely colorable; or in other words, that it is a fraud upon the law. Is this so? The second section of the third article of the constitution declares, that the judicial power shall extend to controversies "between citizens of different states." The framers of the federal constitution were wise and sagacious men. They were profoundly acquainted with human nature in its individual and aggregate action. They were instructed in no ordinary school; and in nothing was their sagacity more eminently shown, than in establishing a judicial power to carry out and maintain the federal powers, and provide against the effects of local excitement. For these purposes were the courts of the United States chiefly established. An option is given to citizens of other states than those in which suits are brought, to sue in the courts of the Union. The complainant is a citizen of Connecticut. He has stock in the bank, which he apprehends will be forcibly and unlawfully seized and abstracted. And if so seized, for the reasons stated in his bill, the law will afford to him no adequate means of redress. Under such circumstances, is he guilty of a legal fraud, or of claiming a colorable right only, by suing in the circuit court? He claims the exercise of a constitutional right, to sue in this court. And if a suit thus brought, makes the directors of the bank defendants in the suit, and being parties on the record, brings the bank within the relief prayed, the fault is in the law, rather than in the complainant, and the reproach, therefore, should not be thrown on him.

This court brings into a state no novel principles. It administers the law of the state. In giving effect to the statutes of the state, where there is no conflict with the fed-

eral constitution, the courts of the Union follow implicitly the rule established by the supreme court of the state. This is done, not on the ground of authority, but of policy. It would be injurious to the citizens of a state, to have two rules of property. Such a course, by the courts of the Union, would produce unfortunate conflicts and encourage litigation. To avoid this, as a matter of policy, the courts of the United States follow the state courts, in the construction of their statutes. So far has this been carried, that the supreme court of the United States has reversed its own decision, made in accordance with the state decisions, in order to conform to a change of decision in the supreme court of the state, in the construction of its statutes; and I trust that no circumstances will ever induce the supreme court of the Union to reverse this course of decision.

There are but few cases in which, under the federal constitution, the supreme court of the Union establishes the rule of construction for the state courts. Where one such case occurs, there are more than five hundred cases where the courts of the Union follow the state courts. If individuals and courts shall disregard judicial authority, and carry out their own peculiar views of our constitution and laws, the harmony of our system of government must be destroyed, and the law of force must become the arbiter of rights. We think that there is jurisdiction in the case before us, and that the injunction has been rightfully granted, and that it should be made, so far as the illegal tax is demanded, perpetual. The demurrer is overruled.

[The above decision was affirmed by the supreme court on appeal. 18 How. (59 U. S.) 331.]