**BIGELOW v. BOWERS. ***

District Court, S. D. New York.
July 1, 1933.

*For opinion affirming judgment, see 68 F.(2d) 839.

Bigelow & Beatty, of New York City, for plaintiff.

George Z. Medalie, U. S. Atty., of New York City (Walter H. Schulman, Asst. U. S. Atty., of New York City, of counsel), for defendant.

KNOX, District Judge.

In 1914 plaintiff purchased thirty shares of the capital stock of Duryea Manufacturing Company for $1,875. In 1916 he received an additional sixty shares of stock by way of a stock dividend of 200 per cent. upon his original holding. In acordance with section 2 (a) of the Revenue Act of 1916 (39 Stat. 756, 757), which taxed stock dividends as income, and pursuant to the provisions of paragraph 373 of Regulations No. 33 of the Commissioner of Internal Revenue, plaintiff paid an income tax which reflected the cash value of the stock dividend, viz., $6,000, as taxable income. In 1918 he sold the ninety shares for $5,625. Acting upon his interpretation of the requirements of sections 201 (a) and (c), and 213 (a) of the Revenue Act of 1918 (40 Stat. 1057, 1059, 1065), which were practically identical with section 2 (a) of the 1916 act, and of article 1546 of Regulations 45, which provided the method for figuring the gain or loss on the sale of a stock dividend, plaintiff claimed a deduction of $2,250 upon his 1918 tax return. This sum represented the difference between the cost of the original thirty shares, plus the $6,000 reported as income in 1916, and the selling price of the ninety shares. The tax shown to be due by the 1918 return was duly paid in installments during 1919.

On March 8, 1920, the Supreme Court decided the case of Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570, holding the levy of an income tax on stock dividends, as provided in the Revenue Act of 1916, to have been unconstitutional. Some months thereafter, and without further change in basic legislation, the Treasury Department thereupon issued Treasury Decision 3059. It revoked articles 1545, 1546 of Regulations 45, and amended article 1547 so as to provide that stock dividends should no longer constitute taxable income, but that the entire proceeds received upon the sale of such stock should be regarded as a taxable gain. Accordingly, in 1923, the Revenue Bureau refigured plaintiff's 1918 tax return, and disallowed the deduction of the loss which plaintiff had taken on the aforesaid sale of stock. The effect of this procedure was to increase his taxable income to the extent of $3,750, and to create a deficiency tax liability of $2,151.17. Under protest, plaintiff paid the assessment thus made against him. He brings this action to recover the same.

Had plaintiff filed a timely claim for the refund of overpayment of the 1916 tax, after the decision of Eisner v. Macomber, supra, on the ground that the stock dividend had been unconstitutionally taxed, he could have recovered such overpayment. The decision that section 2 (a) of the 1916 act was unconstitutional rendered that section and the corresponding sections in the 1918 act null and void from the dates of their enactment, and made them as inoperative as though they had never been enacted. Chicago, Indianapolis & Louisville Railway Company v. Hackett, 228 U. S. 559, 33 S. Ct. 581, 57 L. Ed. 966; Norton v. Shelby County, 118 U. S. 425, 6 S. Ct. 1121, 30 L. Ed. 178. Under section 252 of the Revenue Act of 1918 (40 Stat. 1085), plaintiff had until March 15, 1922 (five years from the due date of his 1916 tax return), to file his claim for a refund. For some reason he failed so to do. In lieu thereof he took steps to recover the tax paid upon the aforesaid deficiency assessment, and they have resulted in this suit.

Plaintiff places his chief reliance for success on the proposition that, if the intent of Congress, as expressed in the 1918 act, was not to tax the entire proceeds of the sale of the stock, that intent could not be altered so as to achieve a contrary purpose by the decision which held a tax upon stock dividends to be violative of the Constitution. His argument is that, so construed, the statute subjects him to double taxation, and that

this is contrary to its end and design. Furthermore, he says the Commissioner of Internal Revenue was without authority so to construe the law, and to read into it an intent which it never carried.

This argument is based upon the assumption that the expressed intention of Congress, as set forth in the Revenue Act of 1918, was so specific and definite that the government could, under no contingency, regard the entire proceeds of the sale of a stock dividend as taxable income. In my opinion, this assumption is not well founded. Had the statute specifically contained such a provision, it is apparent that neither the Commissioner of Internal Revenue nor the Treasury Department could have required the payment of a tax upon such proceeds. But such is not the case. The act merely declared that: "A dividend paid in stock of the corporation shall be considered income to the amount of the earnings or profits distributed." Section 201 (c).

In the course of administering this provision, article 1546 of Regulations 45 was promulgated. That article—and not the Revenue Act—provided that only the difference between the sales price of the stock and "the valuation at which it was returnable as income" should constitute a taxable gain or loss. There can be no proper cavil with the regulation, the obvious design of which was to avoid the exaction of a double tax. Inasmuch as the stock dividend had already been taxed as income, the taxpayer, upon a sale of his stock, would have been liable to a double tax had the entire proceeds of the sale been treated as taxable income.

But, upon the decision of the Supreme Court, in Eisner v. Macomber, supra, the officers charged with the administration of the act were confronted with a new situation. They were faced with the necessity of conforming their regulations to a statute which, by judicial decision, had been drastically changed, and which, after the change, contained no provision for the imposition of a tax on stock dividends. As the act then stood, it would have been not only improper, but impossible, for the purpose of ascertaining a taxable gain upon the sale of stock received as a dividend, to take as the cost value of the stock "the valuation at which it was returnable as income." Accordingly, the administrative officials of the Treasury Department recast their Regulations to fit the Revenue Act as it then existed.

Section 202 (a) of the act provided:

"That for the purpose of ascertaining the gain derived or loss sustained from the sale or other disposition of property, real, personal, or mixed, the basis shall be—

"(1) In the case of property acquired before March 1, 1913; * * *

"(2) In the case of property acquired on or after that date, *the cost thereof;* or the inventory value, if the inventory is made in accordance with section 203." (Italics mine.)

Obviously, since the cost of a stock dividend was nothing, the difference between such cost and the price at which the dividend was sold would always be the entire proceeds of the sale.

This section, it is true, was in the statute as originally enacted. Nevertheless, the Regulations had provided for the taxation only of such portion of the proceeds as was in excess over the valuation of the dividend that had been returned as income. In view of the fact that section 201 (c) already had taxed the stock dividend to the extent of its value when it was received, a contrary ruling would have subjected the taxpayer to a double tax. But, once that this section of the act was no longer operative, there was no occasion for such a regulatory construction. From that time on, the amendment of article 1547 of Regulations 45, so as to impose a tax on the entire profit realized upon the sale of stock received as a dividend, was in complete accordance with the plain language of section 202 (a) of the Revenue Act. The intent with which Congress had acted in passing section 201 (c) of the statute had now become academic. It may be observed that a legislative intent that is not in accordance with fundamental law need not be the subject of speculation. The purpose of Congress must be discerned from the context only of its valid enactments. The question before the administrative authorities was as to the natural and logical interpretation of the act under its changed status.

Very properly, therefore, the new article was so framed as to carry out the valid provisions of the Revenue Act. And, in adapting regulations to fit the requirements of the Revenue Act, as it existed subsequent to the decision in Eisner v. Macomber, the Commissioner of Internal Revenue usurped no power. He was confronted with a law that, upon its face, had been changed, and was compelled to alter his regulations to suit new conditions. Certainly he could not continue to govern himself by a provision of law that had been held authoritatively to be beyond the power of Congress to enact. It simply cannot be that, until Congress took action looking to a change in the statute, the Commis-

sioner was under a duty to collect taxes that were covered by a statute that had finally been held to be unconstitutional. To have done so would have been an idle imposition upon those whose incomes fell within the terms of the invalid statute, and he would have subjected himself to grave consequences. See Board of Liquidation v. McComb, 92 U. S. 531, 541, 23 L. Ed. 623; Woolsey v. Dodge, 30 Fed. Cas. page 606, No. 18,032, affirmed 59 U. S. (18 How.) 331, 15 L. Ed. 401. Cf. Ex parte Young, 209 U. S. 123, 167, 28 S. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764.

I cannot but see, notwithstanding the misfortune of plaintiff, that the amendment of the Regulations, and the action of the Commissioner in imposing a deficiency tax upon him, were entirely proper and in accordance with the valid provisions of the Revenue Act.

Plaintiff's motion for judgment on the pleadings is denied. The cross-motion by defendant is granted.