THE PEOPLE ex rel. THOMAS G. KILLEEN, Appellant, v. CLARENCE B. ANGLE, Secretary, etc., Respondent.

Under the provisions of the state Constitution, as amended in 1873 (art. 5, § 3), conferring upon the superintendent of public works the power to select and appoint his subordinates, that officer has the exclusive power to determine as to the propriety of such appointments and the sufficiency of the qualifications of proposed appointees.

Any legislation, therefore, which relieves the superintendent from the obligation to exercise his judgment and skill in making an appointment, or imposes restrictions upon the exercise of the power conferred, is unconstitutional.

The provision of said Constitution, contained in the same article as the one above referred to before it was amended (art. 5, § 6), declaring that the powers and duties of the boards and officers mentioned in the article "shall be such as now are or may be hereafter prescribed by law," does not apply to the officers created by the amendment.

Constitutions, as well as statutes, must be so interpreted as to give effect to every part thereof and leave each part some office to perform; a construction is unauthorized which deprives any part of effect and meaning when it is susceptible of another interpretation.

Where there is a repugnancy between a constitutional amendment and some provision in the original, which cannot be so construed as to have them both stand and leave to each a legitimate office to perform, the original must be deemed to have been repealed by the amendment.

Accordingly held, that the subordinates, whom said superintendent is so authorized to appoint, do not come under the act creating the civil service

commission (Chap. 354, Laws of 1883); and that the said act and the rules promulgated under it, so far as they attempt to intrench upon this power of appointment, are inoperative and void.

(Argued April 24, 1888; decided June 5, 1888.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, made January 23, 1885, the nature of which is set forth in the opinion. (Reported below, 47 Hun, 183.)

*Everett P. Wheeler* for appellant. Though the legislature has no power under the language of a particular Constitution to appoint persons to office, yet it may constitutionally regulate the mode of appointment. (*People* v. *Hurlburt,* 24 Mich. 44; *State* v. *Kennon,* 7 Ohio St. 546; *Capen* v. *Foster,* 12 Pick. 485; *People* v. *Lacombe,* 99 N. Y. 43.) The right of the legislature to prescribe and ascertain qualifications is not inconsistent with the executive power of appointment. (*Ex Parte Curtis,* 106 U. S. 371; *U. S.* v. *Curtis,* 12 Fed. R. 484.) The legislature may regulate the exercise of a power conferred upon a co-ordinate branch of the government. (Const. of N. Y. art. 6, § 6; *People* v. *Dwyer,* 90 N. Y. 402; *In re Oldham,* 89 N. C. 23.) An act will not be declared void unless clearly unconstitutional. (*Metropolitan Bank* v. *Van Dyke,* 27 N. Y. 409; *In re Jackson,* 14 Blatchf. 245; *McCulloch* v. *State of Maryland,* 4 Wheat. 421–423; *People* v. *Flagg,* 46 N. Y. 401; *People ex rel. Hatfield* v. *Comstock,* 78 id. 361; *In re Thirty-fourth Street R. R. Co.,* 102 id. 343, 350; *People ex rel. Smith* v. *Fisher,* 24 Wend. 220; *Lewis' Appeals,* 67 Penn. St. 153; *In re Gilbert El. R. R. Co.,* 70 N. Y. 361; *People ex rel. Williams* v. *Dayton,* 55 id. 380; *People* v. *Supervisors of Orange,* 17 id. 241.) The true rule is that amendments and additions to the Constitution must be read in connection with the whole instrument, and do not supersede any provision to which they are not absolutely repugnant. (*Gilbert El. R. R. Co.* v. *Anderson,* 3 Abb. N. C. 452; *Settle* v. *Van Evrea,* 49 N. Y. 284; *Manley* v. *State,* 7 Ind. 135; *In re Clinton St.,* 2 Brewst. [Penn.] 599; Sedgwick on Statutory and Const.

Law, 106 ; *Holbrook* v. *Nichol,* 36 Ill. 161.) Public offices. in this state are not incorporeal hereditaments ; nor have they the character or qualities of grants, but they are agencies. They are created for the benefit of the public, and not granted for the benefit of the incumbent. (*Connor* v. *City of New York,* 5 N. Y. 294; *Smith* v. *City of Poughkeepsie,* 37 id. 511.) The civil service act is not in violation of article 12 of the Constitution, which provides that "No other oath, declaration or test shall be required as a qualification for any office of public trust. (*In re Met. G. L. Co.,* 84 N. Y. 526 ; *People* v. *Briggs,* 50 id. 553.) The clause in the federal Constitution as to the appointing power construed. (*Brown* v. *U. S.,* 113. U. S. 571 ; *People* v. *Dayton,* 55 N. Y. 367 ; *Stewart* v. *Laird,* 1 Cranch, 299, 309.) Congress has power to prescribe the qualifications of persons to be appointed by the executive and to provide means for ascertaining such qualifications by implication from its legislative power, and this is not inconsistent with the power of appointment vested solely in the executive. (*U. S.* v. *Hartwell,* 6 Wall. 393, 394.)

*D. O'Brien* for respondent. The power given to the heads. of the various department of the state government to appoint subordinates is, as a general rule, a statutory one. In so far as it is conferred by statute, it may be taken away by the same power which conferred it. It may be modified, or the legis-- lature may provide for its exercise under certain conditions, restrictions and limitations, but when the power and duty to appoint is conferred by the Constitution itself, as in the case at bar, the legislature cannot interfere ; and the civil service act and the regulations under it, so far as they attempt to limit the power of appointment conferred upon the superin-- tendent of public works, are void. (Const., art. 5, § 3 ; *Barker* v. *People,* 3 Cow. 686 ; *Menges* v. *City of Albany,* 56 N. Y.. 374.) If the word test, as used in article 12 of the Constitution, is to be given the same meaning as the legislature gave it in section 15, and other sections of the act of 1883, then the provision of said article as to the oath to be taken by officers operates.

1888.]     People ex rel. Killeen v. Angle.     **567**

Opinion of the Court, per Ruger, Ch. J.

as a limitation upon the power of the legislature to require applicants for positions under the superintendent of public works to possess any other qualifications than those expressly required by the Constitution. (*Barker* v. *People*, 3 Cow. 686 ; *People* v. *McKinney*, 52 N. Y. 374.)

Ruger, Ch. J. — This appeal brings before us for review an order of the General Term of the Supreme Court denying an application for a *mandamus*, to compel the New York Civil Service Commission to admit the relator to examination as to his fitness to perform the duties of the office of clerk to the collector of canal statistics. It is claimed that the relator became entitled to the writ by virtue of the provisions of chapter 354 of the Laws of 1883, creating a civil service commission, and the rules issued in pursuance of authority thereby conferred. It must be conceded that this claim is well founded, provided the statute and rules are to be enforced according to their plain meaning and intent. It is, however, contended by the respondent that, so far as such statute and rules intrench upon the power and authority to manage and control the business of the canal department and appoint, remove and suspend subordinates at pleasure, conferred upon the superintendent of public works by the Constitution, they are unconstitutional and void, and, therefore, neither impose the duty or confer authority upon the commission to make the examination applied for. This contention brings before the court one of the most important and delicate duties it is called upon to perform, viz., that of pronouncing upon the constitutionality of an act of the legislature, and, within settled rules, it requires a case to be made showing clearly that the statute, when fairly and reasonably construed, is brought into conflict with some provision of the Constitution, before the court can be justified in pronouncing it an unauthorized expression of legislative will. If the act and the Constitution can be so construed as to enable both to stand, and each can be given a legitimate office to perform, it is the duty of the court to give them such construction ;

but if this cannot be done, it is equally our duty to declare the supremacy of the constitutional provision, and the nullity of the statute. While every presumption, is in favor of the constitutionality of the law, if, nevertheless, it appears that its enforcement must necessarily produce a conflict with the letter or spirit of the Constitution it is the duty of the court to condemn the law.

There is but little dispute between the parties as to the rules governing the interpretation of statutes, and that subject may be disposed of by reference to the rule stated in the head-note of the *People ex rel. Jackson* v. *Potter* (47 N. Y. 375), which reads as follows : " The established canons of construction applicable to statutes, to wit., that the intent of the law-maker is to be sought for, and, when discovered, is to prevail over the literal meaning of the words of any part of the law ; and that this intent is to be discovered, not alone by considering the words of any part, but by ascertaining the general purposes of the whole, and by considering the evil which existed calling for the new enactment, and the remedy which was sought to be applied, apply as well to the construction of a Constitution as to that of a statute law." It will be convenient then, at the outset, to refer briefly to the history of the constitutional amendment of 1876, and the causes which led to its adoption, and thus obtain a view of the object which its framers designed to accomplish thereby. Previous to its adoption, for many years the management and control of the canals of the state, had been mainly intrusted to the supervision of three canal commissioners, each one having special charge of a separate division of the canal, and to a board of canal commissioners and the canal board, each having functions to perform with sometimes joint, and sometimes divided responsibility therefor. Under such an administration of canal affairs great complaints had been made of the waste, extravagance and inefficiency of the system, and the facilities for fraudulent practices afforded to public peculators, and the difficulty of determining, in the multiplicity of the officers having authority over the subject, who was justly

responsible therefor. It was, therefore, considered desirable that a change should be made in the method of conducting that department of the public business. (Appleton's Encyclopædia for 1875, title, New York.) After a lengthy and continued discussion of the subject, it was, by very general consent, determined that a system by which the duties theretofore performed by the various boards and officers having charge thereof should be devolved upon a single officer who should give security, and be held solely responsible for the faithful performance of such duties, would effect the reforms deemed desirable, and the amendment to the Constitution was, therefore, adopted. So far as it is material to the questions here involved, it reads as follows: "A superintendent of public works shall be appointed by the governor. * * * He shall be required by law to give security for the faithful execution of his office before entering upon the duties thereof. He shall be charged with the execution of all laws relating to the care and navigation of the canals" and, * * * "subject to the control of the legislature, he shall make the rules and regulations for the navigation or use of the canals. * * * The superintendent of public works shall appoint not more than three assistant superintendents, whose duties shall be prescribed by him, subject to modification by the legislature. * * * All other persons employed in the care and management of the canals, except collectors of tolls and those in the department of the state engineer and surveyor, shall be appointed by the superintendent of public works and shall be subject to suspension and removal by him."

It is apparent from these provisions that it was intended thereby to create a new scheme for the management of the canal affairs of the state; the principal feature of which was to give large authority to the superintendent in their management and control, and to hold him personally accountable for any failure to exercise such powers in the interest and for the benefit and advantage of the People. As an incident of this scheme the superintendent was given power, subject only

570      PEOPLE ex rel. KILLEEN *v.* ANGLE.      [June,

Opinion of the Court, per RUGER, Ch. J

to his sense of duty and the obligations of his oath of office, to select and appoint his subordinates, and was to be made personally responsible for the faithful performance of the duties assigned to them. It was plainly intended thereby to leave to the superintendent exclusively the determination of the propriety of such appointments, and the sufficiency of the qualifications possessed by proposed appointees, and to hold him responsible for the faithful exercise of his intelligence, judgment and discretion in the performance of that duty. The broad grant of power excludes the idea that it was intended that he should be hampered, restricted or regulated in its exercise by any extraneous authority whatever, except such as might be authorized by other constitutional limitations expressly applicable thereto. When this amendment was adopted, the People had plainly before them the question of the mode thereafter to be pursued in appointing subordinate officers of the canals, and they decided to confide their selection to the superintendent, and trust to his judgment for the faithful performance of that duty. This decision cannot now be reversed or disregarded without overthrowing the fundamental law, although it may be thought that a better method of performing such duties has since been discovered. Any provision of law, therefore, which materially interferes with the freedom of selection conferred upon the superintendent, and the exercise of his judgment in investigating and determining the fitness and propriety of contemplated appointments, seems to us not only to conflict with the terms of the Constitution, but plainly to violate its spirit and intent. (*Menges* v. *City of Albany*, 56 N. Y. 374.)

A very brief summary of the provisions of chapter 354 of the Laws of 1883 and the rules adopted thereunder, so far as they are material to this discussion, will show to what extent, if any, the choice of the superintendent in the appointment of his subordinates has been affected by the civil service legislation. The act provides for the appointment by the governor, with the advice and consent of the senate, of three persons to constitute a civil service commission.

1888.]      PEOPLE ex rel. KILLEEN *v.* ANGLE.      571

Opinion of the Court, per RUGER, Ch. J.

This commission is charged with the duty of aiding the governor in preparing rules to carry into effect the act, and, among other things, to provide for competitive examinations, for testing the fitness of applicants for public service, now classified or to be classified hereafter. It was further provided that " all the offices, places and employments so arranged or to be arranged in classes shall be filled by selections from among those graded highest as the results of such competitive examinations." Section 7 then enacts that, " after the termination of eight months from the expiration of the present session of the legislature, no officer or clerk shall be appointed to, or promoted in either of the said classes now existing, or that may be arranged hereafter pursuant to said rules, until he has passed an examination or is shown to be specially exempted from such examination in conformity herewith '

It was conceded that the office sought by the relator is classified in such rules, under Schedule B, as an office subject to the provisions of the act. By rule 17 it was further provided " whenever any officer having the power of appointment to or employment in any grade or subdivision in this schedule shall so request, the commission shall certify to him the names of three eligible persons who are graded highest on the proper register, indicating such of them, if any, as have been honorably discharged from the military or naval service of the United States in the late war. From the three persons whose names are so certified the officer shall make a selection to fill the vacant place, subject, however, to the provisions of rule 44." This rule requires such appointment to be filled by a a person honorably discharged from the army or navy in the late war, though graded lower than the others so examined, provided there be such persons on the list furnished. It thus appears that the superintendent is absolutely prohibited from making any appointment to a place, authorized by the Constitution to be filled by him, unless such person has passed the examination required by the act. He is further restricted to a selection from among the names of three persons certified

to him by the commission, unless one of such persons shall be a soldier or sailor honorably discharged from the service of the United States in the late war, in which case he is required to appoint such soldier or sailor, whatever his grade may be, upon such list, to the exclusion of all other applicants. We are not at all disposed to question the merits of the scheme of civil service administration which has been inagurated under these laws, but we believe that one which more effectually annuls and overthrows the system of canal management provided by the Constitution could scarcely be devised. Under this law the superintendent is absolutely deprived of the exercise of any judgment, choice or discretion in the matter, and is required in some cases to appoint the single individual whose name is presented to him by the commission, and in all other cases his choice is limited to a selection from among three persons whose names may or may not be all submitted to him by the same body. Under the Constitution the superintendent is at liberty to select any person for appointment from among the million or more citizens of the state eligible to such office, while under the statute he can, at the best, only select from the three names furnished to him by a tribunal over whom he has no control and the efficiency of whose tests he may entirely disapprove. Whether this mode of selecting the officers in question is a wiser and better one than that provided by the Constitution cannot affect the decision of this appeal, for the sole question here is whether, in its practical operation, the statutory scheme takes away a power otherwise bestowed by the organic law. It is also quite immaterial that the board, authorized to present names for the superintendent's choice determine such names by arbitrary rules which exclude the idea of any bias or personal preference on its part, for 'the question is whether the mode provided materially impairs or destroys the scheme provided by the Constitution. If it does, then it is repugnant to the Constitution and must be condemned, for the law imputes to the legislature an intention to effect those results which are the necessary and natural consequences of the execution

of the laws enacted by it. It seems to us that this law leaves to the superintendent only the barren office of issuing a commission to a person whom others have selected for his adoption, whereas the Constitution provides that he shall be the exclusive actor in determining the wisdom and propriety of the proposed appointment. (*Menges* v. *City of Albany*, 56 N. Y. 374.)

It cannot be reasonably contended that the superintendent. has, under this system, any such freedom of action and choice as is implied in the power to appoint his subordinates and perform the duties charged upon him by the Constitution. Such power embraces in its exercise not only perfect liberty of choice as to the person to be appointed, but the duty of personally investigating the character and qualifications of the proposed appointee, and determining his fitness to discharge the services required of him. This was a duty which the Constitution required him personally to perform, and which he could not lawfully delegate to any other. (*Menges* v. *City of Albany*, *supra*.) Any legislation which relieves him from the obligation to exercise his judgment and skill in the service of the People deprives them of the contemplated benefits arising therefrom, and effects a radical change in the scheme inaugurated by the constitutional provisions. The great impropriety of such a construction is made apparent by the consequences which would follow the taking away the selection and appointment of his subordinates, and at the same time holding him criminally and pecuniarily responsible for the effects of their misconduct and inefficiency in the performance of their duties.

How far the legislature may circumscribe by general laws the eligibility of the citizen to fill offices in the civil service of the state, by declaring disqualifications therefor, arising out. of special circumstances or inconsistent employments, it is unnecessary and would now be unprofitable to consider; but. we think it entirely clear that it has no power to impose restrictions directly upon one who possesses constitutional authority, which practically destroys or impairs the exercise

574          People ex rel. Killeen *v.* Angle.          [June,

Opinion of the Court, per Ruger, Ch. J.

of such authority. The vice of this legislation is that it is directed at the appointing power alone, and enjoins it, in imperative terms, to refrain from the exercise of that power, except under conditions and restrictions imposed by the legislative will alone.

It is further contended by the relator that section 6 of article 5 of the Constitution gives some support to the legislation under consideration. That section provides, in general terms, that "the powers and duties of the several boards and of the several officers in this article mentioned, shall be such as now are or may be hereafter prescribed by law." This section was contained in original article 5 of the Constitution of 1846, and applied to a large number of state officers and boards, besides those of canal commissioners, which were abrogated by the amendment of 1876. The section has, therefore, a wide operation even though it be held not to apply to the officers created by the amendment.

Under well-settled rules of construction we think that there is the most conclusive reason to be drawn, from the language of the amendment itself, for holding that it was not intended to be applied to the superintendent of public works. While in the act of framing this amendment, the question was presented to its authors how far the powers therein attempted to be conferred should be limited by the supervision of the legislature; and, with reference to that subject, they twice expressed themselves in clear and explicit terms. Thus the superintendent was authorized to prescribe the duties of the assistant superintendents, subject to modification by the legislature, and also to make rules and regulations for the use and management of the canals, subject to the same regulations. These provisions were entirely unnecessary if it were supposed that the offices provided for by the amendment were subject to the operation of section 6 of article 5.

Under established rules of construction these express provisions for the supervision by the legislature over the cases referred to, afford the strongest implication that, in other respects, it was not intended to leave the powers conferred by

1888.]     PEOPLE ex rel. KILLEEN *v.* ANGLE.     575

Opinion of the Court, per RUGER, Ch. J.

the amendment to such control or supervision. *"Expressio unius personœ vel rei est exclusio alterius"*

We, however, yield our fullest sanction to the doctrine that an amended Constitution " must be read as a whole and as if every part had been adopted at the same time and as one law, and effect must be given to every part of it, each clause explained and qualified by every other part." (*Gilbert El. R. R. Co.* v. *Anderson*, 3 Abb. N. C. 452.) But when this is done the question remains whether the framers of the amendment intended that a general provision contained in the original instrument, should be applicable to the subject of such amendment.    It would be quite absurd to suppose that, while framing an elaborate scheme of public policy to be incorporated in the fundamental law of the state, they intended to subject it to the operation of general provisions of the same instrument which might, when applied thereto, annul the express grants of power therein contained, and authorize each successive legislature to overthrow and destroy the whole object and effect of the amendment adopted.    To hold that this was the intention of the authors of the amendment would require us not only to stultify them, but would stamp their work as an idle ceremony of no practical importance.    It is a primary rule of construction that statutes must be so interpreted as to give effect to every part thereof and leave each part some office to perform ; and any construction which deprives any part of a statute of effect and meaning, when it is susceptible of another interpretation, is wholly without support from any authority

It is also a familiar rule of construction that if there be any repugnancy between an amended statute or law and the original, which cannot be so construed as to leave them both to stand and each have a legitimate office to perform, the original enactment must be deemed to have been repealed by the later expression of the legislative will. (*Gilbert Elevated R. R. Co.* v. *Anderson*, 3 Abb. N. C. 434, 453 ; *Harrington* v. *Trustees of Rochester*, 10 Wend. 547.) These rules apply as well to the interpretation of Constitutions as of statutes. In

*People ex rel. Jackson* v. *Potter* (*supra*) it was said that " when provisions are made for contingencies apprehended, or for occasional and temporary needs, they cannot be so interpreted as to clash with the general design, but should be in harmonious subservience thereto, and if their terms conflict with those provisions which are made part of the essential frame-work of the general plan, and are of usual, continuous and imperious operation, the former must yield and adapt themselves to the latter."

We are, therefore, of the opinion that section 6 of article 5 does not apply to the superintendent of public works, so far as the Constitution confers power upon him to perform the duties of that office, and that his subordinates do not come under the operation of the act creating the civil service commission.

It follows that the order of the court below should be affirmed.

All concur.

Order affirmed.