LOUIS ROSOFF, Respondent, v. H. L. HAUSSAMEN, Burt Finney,
O. B. Sjurseth,. and P. H. Costello, as Members of the State Board
of Pharmacy of the State of North Dakota, Appellants.

and

STATE OF NORTH DAKOTA EX REL. GEORGE SHAFER,
Attorney General, Appellant, v. LOUIS ROSOFF, Respondent.

(228 N. W. 830.)

Opinion filed January 6, 1930. Rehearing denied February 10, 1930.

*George F. Shafer,* Attorney General, and *C. L. Young,* Special Assistant Attorney General, for appellants.

*Bangs, Hamilton, & Bangs,* for respondent.

Burke, Ch. J.   On the 8th day of November 1927, Louis Rosoff brought a mandamus proceeding against the members of the state board of pharmacy to compel them to recognize him as a member of said board, and on the 29th day of November 1927, the state of North Dakota on relation of George Shafer, attorney general, brought an action against the defendant, Louis Rosoff, for the purpose of trying his title to the office of member of the state board of pharmacy of the state of North Dakota.   The two actions were consolidated and tried on the same stipulated facts.   There was a judgment in favor of Rosoff in both actions, and from these judgments separate appeals were taken and submitted to this court as one action.

The facts stipulated and necessary for consideration are as follows: The state board of pharmacy under § 477, Comp. Laws 1913, "consists of five registered pharmacists."   On May 8th, 1922, one W. P. Porter-

field was duly appointed for a term of five years and qualified and acted as a member of said board during said term.

The North Dakota Pharmaceutical Association was duly incorporated in 1886, and there is nothing in the articles of incorporation or the by-laws providing the number of votes to elect, recommend or to carry any motion at a meeting of said board of pharmacy. On August 3rd, 1926, the North Dakota Pharmaceutical Association then assembled, and having before it, the question of the recommendation of someone to the governor for appointment for the full term of five years to succeed W. P. Porterfield, the following proceedings were had, viz.: "The committee appointed for the purpose of nominating candidates reported to the general meeting as candidates, W. P. Porterfield, P. H. Costello and O. B. Sjurseth to be submitted to the governor from which the governor should select one to succeed the said Porterfield on the state pharmacy board, upon the expiration of his term on May 8, 1927. Mr. Parker, a member of the association, inquired, 'If we nominate three names to be submitted to the governor we are going to get into politics for we are a family and should settle our own dispute right here. I should like to see this association select one name to be submitted to the governor.' Mr. Mergen of Fairmont, then said, 'I think Mr. Parker's idea is correct, and I move that we elect one of the three men named as our candidate to be presented to the governor for appointment.' The president then appointed tellers and advised the members to vote for one. Mr. Mergen then inquired, 'Will it be necessary for the nominee to have the majority of all votes cast, or is it the one receiving the highest number?' The president responded, 'The one receiving the highest number will be declared elected. There is nothing in the by-laws concerning this.' The result of the election was P. H. Costello 23 votes, W. P. Porterfield 19 votes, and O. B. Sjurseth 5 votes. The president declared Mr. Costello elected, and on March 26, 1927, Mr. Sudro, secretary of the North Dakota Pharmaceutical Association, by writing, notified the governor of the recommendation of Mr. P. H. Costello of Cooperstown, for appointment to the state board of pharmacy to succeed W. P. Porterfield whose term would expire May 8, 1927, and which notice was acknowledged by the governor on March 28, 1927," two days later. On May 7, 1927, the governor

ignoring the recommendation of the pharmacy board appointed Louis Rosoff for the full term of five years. Rosoff was a registered pharmacist and qualified to act as a member of said board, except, that he did not have the recommendation of the board. He took the oath of office, however, and filed his bond, and attended one meeting, and was thereafter refused recognition by the board. There is only one question involved, and that is, had the governor power to appoint Mr. Rosoff to the position? If he had not, the judgment in both actions must be reversed.

The law (§§ 477, 487 and 480, subdivisions a, b and c, Comp. Laws 1913) reads as follows:

"The state board of pharmacy shall consist of five registered pharmacists. The members of said board shall be appointed by the governor upon the recommendation of the North Dakota pharmaceutical association, and the persons so appointed shall be chosen from the members of said association. Except as provided in the next section the members of said board shall be appointed for a term of five years and until their successors are appointed and qualified."

"The three members of the present state board of pharmacy shall continue in office for the remainder of their respective terms, and the governor shall appoint two additional members, one for a term of four years and one for a term of five years. In case of a vacancy by death, resignation or removal the governor shall fill the vacancy by an appointment for the unexpired term."

"A majority of the board shall constitute a quorum for the transaction of any business. The board shall have power and it shall be its duty: (a) To cancel and revoke the certificate and registration of any registered pharmacist, or registered assistant pharmacist for incompetency, or who is addicted to any drug habit. (b) To examine and register as pharmacist and assistant pharmacist all applicants which it shall find to be entitled to such registration. (c) To prescribe rules and regulations for the guidance of its members, officers, and employees, and to ensure the proper and orderly dispatch of its business."

Two classes of appointments are provided for. First, § 477, the governor shall appoint for the full term upon the recommendation of the association. Second, under § 478, if a vacancy occurs on the board by

death, resignation or removal the governor shall fill the vacancy by an appointment for the unexpired term. It is clear from these sections, that the governor has the absolute power to fill a vacancy caused by the death, resignation or removal of a member, but only for the unexpired term. Nowhere in the statute is the governor given power to appoint for a full term, except, upon the recommendation of the board. This is purely a statutory board, and the governor has only such power as the statute gives him. It does not give him the power to appoint for a full term, but only the power to appoint to fill vacancies caused by death, resignation or removal. There was no vacancy in this case, such as it contemplated by the statute, as Porterfield held over. In case of death, removal or resignation there is no holding over. This was made clear by Chief Justice Bruce in the case of State ex rel. Langer v. Crawford, 36 N. D. 385, 162 N. W. 710, Ann. Cas. 1917E, 955, in which he said: "I am of the opinion that the expiration of a prescribed term, when coupled with the fact that the senate of the preceding legislature adjourned without confirming successors in office (to persons holding under a former appointment), and especially where no nominations were presented to the senate to fill such offices when the term should expire, will not operate to create a vacancy in the office which, under the statute, can be temporarily filled by the governor, and that the vacancies contemplated by the statute to be filled by him are actual vacancies and such as arise from death, resignation, and like causes. . . . His (the governor's) powers are not inherited or inherent, but are only such as have been given to him. Among these powers granted are not to be found the general power of appointing to public office. That power is reserved to the legislature." Citing, State ex rel. Standish v. Boucher, 3 N. D. 389, 21 L.R.A. 539, 56 N. W. 142; Fox v. McDonald, 101 Ala. 51, 21 L.R.A. 529, 46 Am. St. Rep. 98, 13 So. 416; State ex rel. Sherman v. George, 22 Or. 142, 16 L.R.A. 737, 29 Am. St. Rep. 586, 29 Pac. 356; State ex rel. Richardson v. Henderson, 4 Wyo. 535, 22 L.R.A. 751, 35 Pac. 517.

In a concurring opinion Judge Christianson said: "It is a well-settled principle of construction that when a statute or a constitutional provision directs that a thing be done by certain persons and in a certain manner, this affirmative contains a negative, that it shall not be

done by other persons or in another manner." Citing State ex rel. Frich v. Stark County, 14 N. D. 368, 103 N. W. 914.

Where the senate is in session and the term of an office will expire before the next session it is the duty of the governor to nominate a person to fill the vacancy and to send his name to the senate for approval, and if he fails to do so he cannot make a valid appointment to fill such vacancy during the recess of the senate. Brady v. Howe, 50 Miss. 607.

Where a city ordinance provided that the office of fire engineer should be filled by the mayor with the consent of the city council and the mayor ordered the incumbent of the office to withdraw and appointed the defendant but the city council did not approve of his action it was held that the defendant had no right to the office, but that incumbent had been and still was rightfully therein. State ex rel. Atty. Gen. v. Bryson, 44 Ohio St. 457, 8 N. E. 470.

"The mere expiration of the term of office does not create such a vacancy as to authorize an appointment during a recess of the confirming body." People ex rel. Laine v. Tyrrell, 87 Cal. 475, 25 Pac. 684; Smoot v. Summerville, 59 Md. 84; Ash v. McVey, 85 Md. 119, 36 Atl. 440; Tappan v. Gray, 9 Paige, 507.

"The Constitution may draw a distinction between successors and appointees to fill vacancies, and it may provide that successors must be appointed by the governor in all cases by and with the advice of the senate, but permit appointments to fill vacancies to be made by the governor alone when the general assembly is not in session." 22 R. C. L. 441.

Where there is no constitutional restriction, it follows that the legislature has the power to distinguish between successors and appointees and that is exactly what it did in the statute under consideration. This statute gives the governor no authority to appoint on his own motion, except, in case of vacancy by death, resignation or removal.

"The contingencies and events on the happening of which public office shall be considered vacant may be and often are enumerated in the constitution or the statutes of the state. Among usual statutory grounds for recognizing that a public office is vacant may be mentioned the death of the incumbent, his resignation, impeachment, removal from office, etc." 22 R. C. L. 438 and 439.

In the case of State ex rel. Carson v. Harrison, 113 Ind. 434, 3 Am. St. Rep. 663, 16 N. E. 384, the court said: "While it is the right of the executive department to determine for its own guidance whether or not a vacancy exists in each particular case, and while every intendment is to be indulged in favor of the action of the executive, it must nevertheless, be borne in mind that the power of the governor to make a valid appointment does not arise until there is a vacancy in fact. The existing title of the incumbent cannot be extinguished or affected by the ex parte judgment of the executive that the office is vacant. . . . Having reached the conclusion that there was no vacancy, it is manifestly not important that we should consider whether or not the governor had the power to appoint in case a vacancy had arisen during the session of the legislature." The judgment holding an appointment illegal was affirmed.

A case very much in point is the Opinion of the Justices of Massachusetts Supreme Court, 154 Mass. 603, 31 N. E. 634. Section 1, chapter 103, of volume 1, General Laws of Massachusetts provides: "That the governor, with the advice and consent of the council, shall appoint two commissioners of pilots for the harbor of Boston, in this chapter called commissioners, for the term of three years. They shall first be recommended by the trustees of the Boston Marine Society, but neither of them shall be one of said trustees. Upon the failure of the trustees to make such recommendation, the governor with the advice and consent of the council shall appoint said commissioners without it." Under this statute the governor appoints with the advice and consent of the council, but not until recommendations are made by the Boston Marine Society. The court said: "The meaning of Public Stat. chap. 70, § 2 (§ 1, chap. 103, Laws 1921) seems to us to be that the persons to be appointed commissioners of pilots for the harbor of Boston by the governor, with the advice and consent of the council, must first be recommended by the trustees of the Boston Marine Society, and that the governor and council can appoint said commissioners without such recommendation only when the trustees refuse, decline, and are unable to make a recommendation. It appears that the trustees actually recommended to the governor and council the appointment of Mr. Edwin B. Wadsworth for the term of three years from the expiration

of the term of office of Mr. Thomas P. Howes, that this recommendation was made and sent to the governor and council on the 8th day of July, 1890, and that the term of office of Mr. Howes did not expire by limitation until the 13th day of said July. We understand that this recommendation of Mr. Wadsworth by the trustee is still before the governor and council; that the trustees have never withdrawn it, and that they still ask that it may be acted upon. We are of the opinion that the recommendation of Mr. Wadsworth by the trustees was seasonably made; and that the governor and the council were not authorized to reappoint Mr. Howes under the circumstances stated in the order. We are also of the opinion that the statute of 1887, chap. 364, applies to the office of the commissioner of pilots for the harbor of Boston. The commissioners are officers appointed by the governor with the advice and consent of the council, although they must first be recommended by the trustee of the Boston Marine Society if the trustees are able and willing to make the recommendation. . . . The effect of the statute of 1887, chap. 364, is, that Mr. Howes continues to hold the office the term of which expires by limitation on July 13, 1890, until his successor in office has been duly appointed and qualified. Counsel for respondent says, "No claim was made in this case, that the governor and council were shorn of their power of discretion and judgment." The statute does not take any authority away from them, it simply adds to their duties, that of appointing commissioners of pilots when the recommendation is made by trustees of the Boston Marine Society. The claim was made, however, in the case of Bradley v. Board of Zoning Adjustment, 255 Mass. 160, 150 N. E. 892, and the Massachusetts Supreme Court in an elaborate opinion by Chief Justice Rugg construes an act providing that, "The chairman of the city planning board ex officio and eleven members appointed by the mayor in the following manner, one member from two candidates nominated by the associated industries of Massachusetts, one member from two candidates nominated by the Boston Central Labor Union, one member from two candidates nominated by the Boston Chamber of Commerce, and one member from two candidates nominated by other different associations until the board was complete." The court said, "The attack on this part of the statute

is based upon the contention that the freedom of appointment naturally appurtenant to the power to name a public officer is curtailed beyond constitutional bounds. . . . A statute designed to secure men of eminent sagacity for the performance of these duties is entitled to every presumption in its favor. The names of the several societies charged by the statute with nominating the individuals from whom the appointment must be made indicate in general that they are composed of members particularly interested in special subjects having direct relation to various aspects of the public welfare likely to be affected by zoning districts. . . . The executive officers and the members of these several societies may be thought to know the persons possessing the finest expert knowledge of the widest practical experience. . . . The qualifications of persons appointed from nominees thus presented to the appointing officer doubtless were supposed by the legislature to be likely to be superior to an exceptional degree. The scheme of the statute is to provide . . . expert advice of unusual quality for the aid of the appointing power. Its design is to secure administrative and executive ability of men of experience." The court then cites numerous statutes limiting the power of appointment to specific classes of persons including Opinion of Justices, 154 Mass. 603, 31 N. E. 634, supra, and also the case of Com. v. Ricketson, 5 Met. 412, where at 417 it was said by the great Chief Justice Shaw:

"It is obvious from the course of legislation upon this subject, that it has been, for a series of years, the wise policy of the law of this commonwealth to provide for the employment of a body of men as pilots, of competent skill and experience, to take charge of vessels both inward and outward bound . . . the requisite skill and experience are insured by providing that they shall receive their authority by a public appointment upon the recommendation of persons of established experience and skill themselves."

It is argued that since each of the societies nominated two candidates for appointment, that, that left some discretion in the appointive power, but if the legislature can limit it to two it can limit it to one. Such statutes are passed and upheld for the purpose of securing the appointment of men to office who are trained and skilled in their profession, vocation, or line of work necessary to qualify for, and to faithfully dis-

charge the duties of the office to which they are recommended and appointed, and when there are no constitutional restrictions as in this case, the legislature has absolute power.

It is essential to the validity of an appointment that there shall have been a compliance with such valid conditions and limitations as may have been imposed upon the appointing power, such, for example, as a requirement that the appointee shall have received specific recommendation. 46 C. J. 953, § 66; Elledge v. Wharton, 89 S. C. 113, 71 S. E. 657; State v. Finger, 48 Ohio St. 505, 28 N. E. 135; State ex rel. Cook v. Polley, 30 S. D. 528, 139 N. W. 118.

In the case of Elledge v. Wharton, 89 S. C. 113, 71 S. E. 657, supra, the South Carolina court construed a statute, § 1 of which provided for the establishing and maintenance of a rural police system in Greenwood county approved February 18, 1911, and which further provides, "that upon the approval of the act it shall be the duty of the governor upon the recommendation of the legislative delegation of Greenwood County to appoint three ablebodied men of the county of Greenwood . . . and shall commission them as county policemen for a term of four years." The governor appointed petitioners as rural policemen on the same day that the act passed upon the recommendation alone of Hon. D. H. McGill one of the Greenwood delegation. It was shown by affidavit of C. A. C. Waller, W. H. Nicholson, and J. W. Bowers, the other members of the Greenwood delegation, that the appointment was made without their recommendation before they had knowledge of the approval of the act or opportunity to recommend. The court said: "The appointment to office not being inherently an executive prerogative, it is competent for the legislature in conferring the power of appointment to attach such limitation and conditions to its exercise as may be deemed proper. The statute expressly provided that the appointment of rural policemen for Greenwood county shall be upon the recommendation of the legislative delegation of Greenwood county, no such recommendation having been made, the appointment was made without authority, and the petitioners cannot be held to be officers de jure."

In the case of State v. Finger, 48 Ohio St. 505, 28 N. E. 135, supra, the Ohio legislature passed an act providing for the mode of conducting elections under which it was made the duty of the executive committee

of the Republican party to designate two members of said party for appointment by the probate judge in said county, that said executive committee selected and designated W. M. Starr and Jess R. Hisscm as members of the board of election and recommended their appointment to the probate judge of the county, but the probate judge refused to make such appointment, and claims to have appointed June 3, 1891, two other persons, members of the same party, and citizens and electors of the said county as members of said board. "Held that the executive committees referred to have under the terms of the act until the first Monday of July in which to recommend qualified persons for appointment by the probate judge as members of the board of election. It is the duty of such judge, upon such recommendations being made within said time to make the appointments so recommended, and appointments made by him before the first Monday of July in the absence of such recommendations are premature and inoperative."

The respondent relies upon the case of People ex rel. Balcom v. Mosher, 163 N. Y. 32, 79 Am. St. Rep. 552, 57 N. E. 88. In this case the controversy was over the civil service statute of 1899, and the question involved was the "power of the legislature to abrogate the right conferred by the state Constitution upon the local authorities of a city to appoint such of its officers as are not directed by the Constitution to be elected or otherwise appointed. . . . Section 2 [of the Constitution of New York] provides 'all city . . . officers whose election or appointment is not provided for by this Constitution shall be elected by the electors of such city, . . . or of some division thereof *or appointed by such authority thereof as the legislature shall designate* (the italics are ours) for that purpose,' while § 9 declares 'appointments and promotions in the civil service of the state and of all civil divisions thereof including cities and villages shall be made according to merit and fitness to be ascertained so far as practicable, . . . shall be competitive, . . .' These two provisions should be construed together giving force to both and to each should be accorded its appropriate place and proper effect. . . . When thus read it becomes manifest that under the Constitution the power of appointment still remains in such local authorities as the legislature has designated for that purpose." The Constitution of New York in direct terms provides, that

such appointments shall be made by the local authorities. But there are no such restrictions in our constitution, and the case is not applicable.

In the case of People ex rel. McClelland v. Roberts, 148 N. Y. 360, 31 L.R.A. 399, 42 N. E. 1082, the superintendent of public works appointed a clerk who had not been recommended by the civil service commission, and the court said: "It is too plain for argument that these enactments require appointments to be made from the civil service lists, made up in the manner indicated in the statute and in the rules formulated by the commission under the authority of the law; and, in order to insure obedience to the system on the part of the appointing power, the chief financial officer of the state was prohibited from making payment to any clerk of his salary or compensation who had not been appointed as required by the law." Appointment held invalid.

The question was before the supreme court of Washington in the case of Jenkins v. Gronen, 98 Wash. 128, L.R.A.1918A, 839, 167 Pac. 916, and the court said: "There are cases which maintain the principle that an officer upon whom the fundamental law confers the power of appointing subordinate officials and employees cannot be deprived of his privilege by civil service rules and regulations which unduly restrict him in his right of choice; others again hold that the right is not unduly restricted where the appointing officer has the choice of selection between as few as three eligibles. People ex rel. Balcom v. Mosher, 163 N. Y. 32, 79 Am. St. Rep. 552, 57 N. E. 88; People ex rel. Qua v. Gaffney, 142 App. Div. 122, 126 N. Y. Supp. 1027; People ex rel. McClelland v. Roberts, 148 N. Y. 360, 31 L.R.A. 399, 42 N. E. 1082; State ex rel. Buell v. Frear, 146 Wis. 291, 34 L.R.A.(N.S.) 480, 131 N. W. 832."

"But the reasoning of these cases, finding its basis as it does in constitutional and statutory grants of power, is not pertinent to, and has no bearing upon, the situation here presented. By the Constitution of this state the city of Tacoma, as a city of the first class, has the power to frame and adopt its own charter. The charter when adopted, and the ordinances lawfully enacted thereunder, thus become in themselves the fundamental law, and must be given consideration as written, however much they may restrict the powers of the immediate appointive

officers. . . . We think, that the charter requires appointments to be made from the list of eligibles according to their relative standings, and that it is the duty of the appointive officer to tender the position first to the person who stands highest on the list, and to the others in turn only after the first has failed to appear on notification, or has otherwise indicated that he does not desire the appointment. The only provision that militates against this conclusion is the requirement that thrice the number of candidates be certified that there are vacancies to be filled, but we think this requirement was intended rather to secure the appearance of a candidate than to give the appointive officer a right of choice."

In the case of People ex rel. Walker v. Capp, 61 Colo. 396, 158 Pac. 143, the supreme court of Colorado having before it for its consideration the civil service law said: "The warden of the reformatory and all other officers placed in the classified service of the civil service law, as amended in 1912, are statutory officers. Their duties, as well as the manner of their appointment, are provided for by statute, not by the Constitution, and therefore, in providing their duties and the manner of their appointment, the legislature is supreme."

The civil service laws requiring more than one name on the civil service list, for promotion or appointment to office, are only necessary when there are constitutional restrictions, and even then, by the weight of authority, the constitutional discretion in the appointing officer is satisfied with a list of three names from which he can make his selection. In the case at bar, there being no constitutional restrictions, the appointment must be made in accordance with the statute upon the recommendation of the pharmaceutical association.

There is no merit in the contention, that the candidate, Costello, did not receive a majority of the votes at the meeting of the pharmaceutical association. When the matter was before the association one of the members made inquiry as follows, to wit: "Will it be necessary for the nominee to have a majority of all the votes cast, or is it the one receiving the highest number?" The president responded, "The one receiving the highest number will be declared elected. There is nothing in the by-laws concerning this." When the vote was taken P. H. Costello having received the highest number of votes cast was declared elected

by the president. There was no appeal from his decision in either case, and his decision became the decision of the assembly. Under the statute the organization has authority to prescribe rules and regulations for the guidance of its members, officers and employees, and to insure the proper and orderly dispatch of its business. "It is the duty of the president of every assembly to inform the assembly when necessary, or when referred to for that purpose, in a point of order or practice." Cushing's Manual, p. 35. "The judgment or will of any number of persons, considered as an aggregate body, is that which is evidenced by the consent or agreement of the greater number of them; and the only mode by which this can be ascertained, in reference to any particular subject, is for some one of them to begin by submitting to the others a proposition, expressed in such a form of words, that, if assented to by the requisite number, it will purport to express the judgment or will of the assembly." Cushing's Manual, p. 9.

In the case of Allen v. Morton, 94 Ark. 405, 127 S. W. 450, the supreme court of Arkansas had before it the question of the election of a treasurer of the University of Arkansas. "At the regular meeting of the board of the trustees of the University of Arkansas an election was held, the result of which was, four votes were cast for W. H. Morton, two for D. M. Allen, one for F. P. Hall and one was cast without a name on it. The second ballot was four votes cast for Morton, and four for Allen. The vote being a tie the governor, who is ex officio a member, and president of the board voted for Allen and declared him elected treasurer. Five of the trustees testified in the trial of the issue in this action, that they voted for Morton on both ballots. No one of the trustees objected to or protested against the result of the ballot as announced, or to the appointment or election of Allen as treasurer." The lower court found that Morton was elected treasurer, and so declared, and ousted Allen from office, and the defendant appealed. "In this case the defendant, Allen, was declared elected treasurer, and the whole board concurred in the declaration. No one objected. He was lawfully appointed treasurer of the University and is entitled to the office. Judgment reversed and action dismissed." So too in the case at bar, the assembly asked the president if a majority was necessary to elect, and was told that the candidate receiving the highest number would be de-

168

clared elected. To this decision no protest was made, and the assembly understanding that the one receiving the highest number of votes would be declared elected, voted, and Costello receiving the highest number of votes, was declared elected without objection or protest from any member. The decision of the president was thus agreed to, and became the decision of the assembly. The judgment in each case is reversed with costs to appellant.

CHRISTIANSON and NUESSLE, JJ., concur.

BIRDZELL, J. (dissenting). This is a controversy involving the right of Louis Rosoff to membership in the state board of pharmacy. His right being questioned by the remaining members of the board, he was excluded from participating with them in the transaction of business; whereupon he brought a mandamus proceeding seeking thereby to compel the defendants to recognize him as a member. Immediately thereafter an action was begun on relation of the attorney general, in which Rosoff was made the defendant, for the purpose of trying his title to the office. The two matters were consolidated for the purpose of trial and tried on stipulated facts. At the conclusion of the trial a judgment was entered in the mandamus proceeding awarding the writ and in the action supporting the defendant's title to the office. From these judgments separate appeals have been taken to this court which are submitted on one brief. The essential facts are: The term for which W. P. Porterfield, member of the state board of pharmacy, had been appointed expired on the 8th day of May, 1927. On the 4th of August preceding the expiration of this term, the North Dakota Pharmaceutical Association took action looking toward the recommendation of a successor. It appears in the proceedings of the association that a committee had made nominations of three persons to be recommended but upon motion that the association proceed to elect one of the three as the candidate to be presented to the governor for appointment the three names were submitted to an election resulting as follows: Costello 23 votes, Porterfield 19 votes and Sjurseth 5 votes. The president declared the one receiving a plurality elected. The governor was notified of such selection on March 26, 1927. Costello possessed the legal quali-

fications for membership. On May 7, 1927, the governor appointed the respondent Rosoff for a term of five years beginning May 8th. Rosoff later qualified by filing an oath of office and a bond. The latter was also a member of the North Dakota Pharmaceutical Association but had not been recommended for appointment by it. Porterfield declined to recognize Rosoff as his legal successor.

The four members of the board, exclusive of Porterfield and Rosoff, up to the time Rosoff qualified, had failed to qualify by filing their oaths of office. The governor declared their several offices vacant and appointed P. H. Costello, Burt Finney, O. B. Sjurseth and C. R. Meredith to membership on the board. The last failing to qualify, the governor later appointed H. L. Haussamen to membership. Haussamen had previously been a member and was one of those whose office was declared vacant because of failure to qualify. After the board was thus constituted a meeting was held in which Rosoff participated as a member. Thereafter, in August, 1927, the pharmaceutical association, acting on the assumption that Rosoff's appointment was illegal, recommended to the governor the name of Nels Brakke for appointment as successor to Porterfield. Brakke was not appointed and at a later meeting of the board Porterfield was recognized by the four members in lieu of Rosoff. These proceedings were then instituted.

The statute governing the appointment in question reads (Comp. Laws 1913, § 477):

"The state board of pharmacy shall consist of five registered pharmacists. The members of said board shall be appointed by the governor upon the recommendation of the North Dakota pharmaceutical association, and the persons so appointed shall be chosen from the members of said association. Except as provided in the next section the members of said board shall be appointed for a term of five years and until their successors are appointed and qualified."

The following section provides that in case of a vacancy by death, resignation or removal the governor shall fill the vacancy by appointment for the unexpired term. The question involved in these proceedings is whether or not the governor in making an appointment to the board must accept as the recommendation of the pharmaceutical asso-

ciation the name of one person selected by it by a plurality but not by a majority of those voting.

The brief of the appellants is principally concerned with a question that is much broader in its scope than that stated above. It is said, "In their immediate aspects these cases involve the validity of a portion of § 477 of the Compiled Laws of 1913 providing for the appointment of a state board of pharmacy." · It is also asserted that the appointment · of the respondent having been made in violation of the provisions of the statute, it becomes apparent that the validity of the statute itself is in issue. Counsel cite various statutes of somewhat similar import which provide for the appointment of various boards from eligible lists furnished by or upon the recommendation .of associations more immediately concerned with the personnel of such boards. · Argument is advanced to demonstrate that the appointive power vested in the governor under §§ 71 and 78 of the Constitution does not embrace all appointive power and that such authority as is vested in the act in question is not so essentially executive that it may not with propriety be exercised by others under legislative direction. State ex rel. Standish v. Boucher, 3 N. D. 389, 21 L.R.A. 539, 56 N. W. 142. Clearly, this conception as to the scope of the question involved is predicated upon the assumption that § 477 of the Compiled Laws of 1913 so limits the exercise of the power therein given that the governor can make no appointment to the board other than that of an individual recommended by the association; also, the further assumption that the action taken by the association in the instant case was a recommendation upon which the governor was required to act in making an appointment. In short the principal argument of the appellants presents a constitutional question rather than a question of statutory construction. Manifestly, if the appointive power exercised in the instant case can be within the fair import of the statute, we are not concerned with whether or not the legislature had power to restrict it and render the governor's action amenable to the will or desires of others.

The statute says that the members of the board shall be appointed by the governor upon the recommendation of the association. The key words in this sentence are "appointed" and "recommendation." Obviously, both words do not mean the same. "Appoint" is defined,

according to Funk & Wagnalls New Standard Dictionary, as "To designate, fix upon, or select as being the person or subject. for some position, object, or the like;" and, according to Webster's New International Dictionary, it means "To constitute; to ordain;" or "to exercise" or "designate." According to Bouvier's Law Dictionary, "appointment" is the designation of a person by the person or persons having authority therefor to discharge the duties of some office or trust; whereas, "recommend," according to Webster's New International Dictionary, means "to commend to the favorable notice of another; to commit to another's care, confidence, or acceptance, with favoring representations; to put in a favorable light before any one; to make acceptable; to attract favor to; to advise; counsel."

In light of these definitions, a holding that the governor is limited in making an *appointment* to the naming of one individual who may have been *recommended* by the association would be to deny that a power of appointment was conferred upon the governor. It would be equivalent to transferring the appointive power from the one in whom it was expressly placed and vesting it in the organization that was authorized merely to *recommend*. It would convert the power to recommend into the power to appoint and render the stronger power submissive to the weaker. It would take from a more natural repository of the power to appoint to an office and vest a governmental power in private hands. This is not to say that this may not be done, at least within limitations, but an intention to that effect should not be ascribed to the legislature unless clearly expressed.

One of the most elementary rules of statutory construction is that a statute should be so construed, where possible, as to give effect to every word. 2 Lewis's Sutherland, Stat. Constr. 2d ed. § 380. Effect can only be given to the words "appointed" and "recommendation," as used in the statute, by giving to it a construction that will permit a selection to be made by the governor from among a number who are recommended to him by the association. There is room, of course, for the contention that the power of appointment is conditioned upon a recommendation and can only be exercised when a recommendation is made. This gives to the word "upon" the effect of a condition rather than a sense descriptive of a natural sequence. To hold that the expression "upon the

recommendation of the North Dakota pharmaceutical association" prescribes the condition upon which alone the governor may make an appointment, would enable the association by nonaction to perpetuate the members of a board in office and render the important duty of making a selection from eligible candidates inoperative. It does violence to the expressed intention of the legislature to so construe the act in question as to enable the association to itself select from its own members the state board of pharmacy. Had the legislature desired to so provide, it would have been a simple matter to have expressed such an intention in unmistakable language. The power given here is not a power to appoint through recommendation but is a power to recommend so that another may appoint.

Our construction of the statute in question is borne out by expressions of the court of appeals of New York relating to a somewhat analogous situation in People ex rel. Balcom v. Mosher, 163 N. Y. 32, 79 Am. St. Rep. 552, 57 N. E. 88. There the Constitution provided that city officers whose election or appointment was not provided for should be elected by the electors of such cities or appointed by such authorities of the city as the legislature should designate for that purpose, and it contained another provision that appointment in the civil service in the state should be made according to merit and fitness as ascertained by competitive examination. It was held that an act of the legislature which provided that appointments should be made of those graded highest in a civil service examination was in violation of the constitutional provision respecting the election or appointment of city officers. In defining the power of appointment, the court said (page 40 of the state report) :

"The decisions of this and other courts, state and Federal, as to the meaning of the word 'appointment' and what constitutes an appointment under the law, are to the effect that the choice of a person to fill an office constitutes the essence of the appointment; that the selection must be the discretionary act of the officer or board clothed with the power of appointment; that while he or it may listen to the recommendation or advice of others, yet the selection must finally be his or its act, which has never been regarded or held to be ministerial. 19 Am. & Eng. Enc. Law, 423; Johnston v. Wilson, 2 N. H. 202, 9 Am. Dec. 50; Hoke v.

Field, 10 Bush, 144, 19 Am. Rep. 58; People ex rel. Kresser v. Fitz-simmons, 68 N. Y. 514; Marbury v. Madison, 1 Cranch, 137, 2 L. ed. 60; Craig v. Norfolk, 1 Mod. 122, 86 Eng. Reprint, 780; People ex rel. Babcock v. Murray, 70 N. Y. 521; Taylor v. Kercheval (C. C.) 82 Fed. 497, 499; Menges v. Albany, 56 N. Y. 374; People ex rel. Killeen v. Angle, 109 N. Y. 564, 573, 17 N. E. 413. Thus it is seen that the authorities upon the subject . . . all agree in the conclusion that the power of selection for a public office is and should be vested alone in the officers or boards authorized to appoint, although it be limited to persons possessing the qualifications required by the civil service stat-utes and rules, and that at least some power of selection is necessary to constitute an appointment. . . ."

Again the court said (page 42 of the state reports, 57 N. E. 91): "As we have already seen, the right of appointment, of necessity, involves the power of selection and the exercise of discretion and judg-ment. Without that power in no just sense can it be said that the right exists."

Here the respondent possesses all of the qualifications prescribed by law for the office in question. We cannot hold that his title is bad without giving to the statute such a construction as would enable the North Dakota Pharmaceutical Association practically to exercise the power of appointment that is expressly conferred upon the governor. It has the undoubted power to recommend, but this, to be effective, must be exercised in such a manner as to leave to the governor his equally undoubted power to appoint.

It will be noted that at the time of Rosoff's appointment the only name before the governor as that of a person recommended by the association was that of Costello who had received a plurality but not a majority of those voting in the meeting at which the selection was made. (Costello has since accepted an appointment to fill a vacancy.) The vote in question was taken in an assembly and in an assembly a majority is ordinarily required to carry any proposition submitted or to elect unless otherwise provided by the by-laws. §§ 46 and 48, Roberts' Rules of Order. Motions affecting procedure which may require a two-thirds vote are an exception. As said in Waples's Handbook on Parliamentary Practice, 2d ed. page 155, without special rules it takes a majority to

pass anything or defeat anything "and the reason is that, as deliberative bodies exist to think and conclude, the deliberation and decision is not that of such a body, but of less, if a majority do not agree." Where one receives a plurality of votes but not a majority in an assembly, it is customary to have the majority approve. Waples, supra, page 156. Where there is an election by an unlimited number of electors, a plurality ordinarily elects but "in deliberative bodies the rule is the reverse; a majority is necessary to election unless a special rule requires only a plurality." Waples, supra, page 279. See also Cushing, Law & Practice of Legislative Assemblies, § 1826; 9 R. C. L. page 1115; Lawrence v. Ingersoll, 88 Tenn. 52, 6 L.R.A. 308, 17 Am. St. Rep. 870, 12 S. W. 422. In the Tennessee Case, supra, reference is made to various authorities, including 6 Am. & Eng. Enc. Law, 1st ed. 332, and to the Stockton senatorial election case (among others) which arose out of the action of the joint assembly or convention of the legislative bodies in New Jersey in proceeding to elect a United States Senator under the provisions of the Federal Constitution requiring Senators to be chosen by the legislatures of the various states. There was no law of New Jersey regulating the election of Senators, but there had been a practice of regulating the election of all officers by resolution of the convention or joint assembly. At the convention for the election of Senators in 1865 a resolution was adopted that a plurality of the members present might elect. Upon a vote taken in joint meeting, Stockton received 40 votes, Ten Eyck 37 votes, Wall one vote, Vroom one vote, Frelingheuysen 1 vote, Little one vote. See Report of Judiciary Committee, Congressional Globe, pt. 2, First Session, 39th Congress, 1564. Stockton was declared elected by the joint assembly but declared not elected by the United States Senate. The rule deduced upon the authority of this case and other expressions referred to in the opinion was stated by the Tennessee court as follows:

"Thus it appears, by concurrence of textbook, judicial, senatorial, congressional, and legislative authority, that the rule is settled that a majority of a definite body present and acting must vote *for* a candidate in order to elect him, and that it is not sufficient that he receive a plurality of votes cast or a majority if blank ballots are excluded. His claim must not depend upon the negative character of the opposition,

but upon the affirmative strength of his own vote. It is not sufficient that a majority were not cast against him; to be elected, the majority must be cast for him." Lawrence v. Ingersoll, 88 Tenn. 65, 6 L.R.A. 308, 12 S. W. 422, supra.

The fact that the chairman of the meeting declared Costello elected did not alter the matter. State ex rel. Duane v. Fagan, 42 Conn. 32. Hence, there was in fact no recommendation by the North Dakota Pharmaceutical Association at the time the appointment in question was made. I am of the opinion that the power to appoint, when occasion arises to make an appointment, cannot be construed to await the pleasure of the organization authorized by law to make recommendations.

It should be obvious from what is said in this dissenting opinion that the writer does not question that part of the opinion of the majority which discusses the power of the governor to fill a vacancy or the duty of the executive to submit appointments to a legislative branch where confirmation is required to complete the act of appointment or the constitutional power of the legislature to vest a limited appointive power in voluntary associations. As the writer views the case in hand, none of these questions is here involved. In his opinion the case turns alone upon the interpretation of the statute vesting a power of appointing to full terms in the governor and a power to recommend in a voluntary association. It seems to him that this statute should be so construed as to give effect to both of these powers. A construction of the statute which so subordinates the power of appointment vested in the chief executive as to make it reflect only the selection of those who merely have a power to recommend, sacrifices a primary legislative intention to a subordinate one. The legislature gave the power of appointment to the governor, not to the association. The title of the governor's appointee to the office should not be defeated by an attempt on the part of the pharmaceutical association to itself make an appointment. It must be remembered here that that organization avowedly declared its purpose to make the selection, and such proceedings as it took in the matter were taken for the purpose of making its selection binding.

I am authorized to say that Mr. Justice Burr concurs in this dissent.

BURR, J., concurs in dissenting opinion.