THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOHN WILLIAM McCLELLAND, Appellant, *v.* JAMES A. ROBERTS, as Comptroller of the State of New York, Respondent.

1. THE CIVIL SERVICE ACT. The Civil Service Act (Chap. 354, Laws of 1883, as amended by chap. 681, Laws of 1894) constitutes a general system of statute law applicable to appointments and promotions in every department of the civil service of the state with such exceptions only as are specified in the statute itself.

2. THE CIVIL SERVICE ACT — CONSTITUTION OF 1894 — DEPARTMENT OF PUBLIC WORKS. The effect of the provision of the Constitution of 1894 (Art. 5, § 9) that "appointments and promotions in the civil service of the state * * * shall be made according to merit and fitness, to be ascertained, so far as practicable, by examinations, which, so far as practicable, shall be competitive," is to subject to the operation of the Civil Service Act appointments in the department of public works of the state of persons to be employed in the care and management of the canals, notwithstanding the constitutional provisions (Art. 5, § 3) vesting the power of appointment and removal of such persons in the superintendent of public works.

3. THE CIVIL SERVICE ACT — CONSTITUTION OF 1894 — SUPERINTENDENT OF PUBLIC WORKS. The decision in *People ex rel. Killeen* v. *Angle* (109 N. Y. 564), to the effect that the legislature could not restrict or qualify the power of appointment and removal vested by the Constitution in the superintendent of public works, and, consequently, that the Civil Service Act did not apply to the exercise of that power, has been superseded by the civil service section of the Constitution of 1894.

4. THE CIVIL SERVICE ACT — CONSTITUTION OF 1894. The civil service section of the Constitution of 1894 is not rendered non-self-executing by the provision therein that "laws shall be made to provide for the enforcement of this section;" but the effect of the section, in connection with the constitutional provision (Art. 1, § 16), that "such acts of the legislature of this state as are now in force, shall be and continue the law of this state, subject to such alterations as the legislature shall make concerning the same," is to bring all positions in the civil service, not excepted by the

statute, within the operation of the Civil Service Act of 1883 and its amendments without re-enactment.

5. DEPARTMENT OF PUBLIC WORKS — CIVIL SERVICE COMMISSION — PAYMENT OF SALARY BY COMPTROLLER.  When a position in the department of public works of the state has been classified by the civil service commission, in pursuance of the Civil Service Act, as one subject to competitive examination, a person appointed to such position by the superintendent of public works subsequent to the taking effect of the civil service section of the Constitution of 1894 and to such classification, is not entitled to a mandamus to compel the state comptroller to pay him the salary attached to such position, in the absence of a certificate from the civil service commission that he had been duly appointed pursuant to the Civil Service Act.

Reported below, 91 Hun, 101.

(Argued January 28, 1896; decided February 18, 1896.)

APPEAL from order of the General Term of the Supreme Court in the third judicial department, made December 3, 1895, which affirmed an order of Special Term denying a motion for a writ of peremptory mandamus.

The facts, so far as material, are stated in the opinion.

*Myer Nussbaum* for appellant.  The provisions of chapter 354, Laws of 1883, did not originally apply to the department of public works, and are not extended by section 9 of article 5 of the Constitution over that branch of the civil service. (*People ex rel.* v. *Angle,* 109 N. Y. 564; *C. B. Co.* v. *Paige,* 83 N. Y. 190; Cooley's Const. Lim. 222; *People ex rel.* v. *Potter,* 47 N. Y. 375; Const. N. Y. art. 1, § 16.)  Chapter 354 of the Laws of 1883 is repugnant to section 9 of article 5 of the Constitution, and is, therefore, abrogated by section 16 of article 1 of the Constitution. (Const. N. Y. art. 3, § 1; Cooley's Const. Lim. 137; Locke on Civil Gov. § 162; *Barton* v. *Himrod,* 8 N. Y. 488; *Santo* v. *State,* 2 Iowa, 165; *Goebrick* v. *State,* 5 Iowa, 491; *State* v. *Beneke,* 9 Iowa, 203; *Parker* v. *Commonwealth,* 6 Penn. St. 507; *Clarke* v. *City of Rochester,* 28 N. Y. 634; *People* v. *Fire Assn.,* 92 N. Y. 316.)

*Matthew Hale* for respondent.  The act to regulate and improve the civil service of the state of New York by its

46

terms applied to the entire public service of the state of New York. (Laws of 1883, chap. 354, §§ 1, 2, 6; *People ex rel v. Angle*, 109 N. Y. 564.) By the new Constitution, which took effect January 1, 1895, the law of 1883 was made applicable to the department of public works; and it follows that the re-classification or restoration of the old classification made by Governor Morton April 15, 1895, was valid and effectual. (Const. N. Y. art. 5, §§ 3, 9; *In re Smith* v. *Bd. Suprs.*, 148 N. Y. 187; *In re Sweeley*, 12 Misc. Rep. 174; 146 N. Y. 401; 5 Record N. Y. Const. Conv. 2438, 2439, 2553, 2559, 2561, 2683.) Chapter 354 of the Laws of 1883 was a valid act, and has been so held by this court. (*Rogers* v. *Common Council, City of Buffalo*, 123 N. Y. 173.) Section 7 of the law of 1883, as amended by chapter 681 of the Laws of 1894, made it the duty of the comptroller to refuse to pay the relator, and subjected him to a penalty in an action that might be maintained by any citizen taxpayer if he should make such payment. (Laws of 1894, vol. 2, pp. 1701, 1702; *People ex rel.* v. *Roberts*, 10 Misc. Rep. 764; *In re Keymer*, 89 Hun, 292; 148 N. Y. 219.)

O'BRIEN, J. The relator, in the month of April, 1895, was appointed to the position of clerk to the collector of canal statistics by the superintendent of public works of the state at a salary of $65 per month. When he applied for his monthly compensation, the defendant, as comptroller of the state, refused to audit or pay the same, and the relator, thereupon, applied for a peremptory writ of mandamus, to be directed to the comptroller, commanding him to draw his warrant for the payment of the claim. The application for the writ was denied, and the order denying the same affirmed at General Term.

The only question involved in this appeal is whether, upon the undisputed facts disclosed upon the application, the relator was entitled to the writ. It is admitted that the relator was appointed to the position without having passed the civil service examination, and that his name has never been certified to

the comptroller by the civil service commission, and it was for that reason that the comptroller refused to pay the claim.

The legal question thus presented has been so fully and ably discussed in the courts below that we feel relieved from the necessity of much further argument in support of the conclusions there indicated.    Indeed, there is very little further to be said upon the important and interesting subject which is involved in the controversy beyond a brief statement of the grounds upon which we think the order below should be sustained.

The statute of this state, commonly known as the Civil Service Law (Chap. 354, Laws of 1883, as amended by chap. 681, Laws of 1894), not only required that clerks and other subordinates in the civil service of the state should be appointed or selected from lists, constituted as therein provided, after competitive examination, but that it should be unlawful for the comptroller to pay the compensation of any clerk in the civil service who had not been appointed pursuant to the provisions of the law and whose name had not been certified to him by the civil service commission.    It is not necessary to subject these statutes to a very close analysis in order to determine the general purpose and policy of the legislature with reference to appointments and promotions in the civil service.    It is too plain for argument that these enactments require appointments to be made from the civil service lists, made up in the manner indicated in the statute and in the rules formulated by the commission under the authority of the law ; and, in order to insure obedience to the system on the part of the appointing power, the chief financial officer of the state was prohibited from making payment to any clerk of his salary or compensation who had not been appointed as required by the law.    It is quite clear, also, that the civil service statutes constitute a general system of statute law applicable to appointments and promotions in every department of the civil service of the state, with such exceptions only as are specified in the statute itself.    It was held in the case of *People ex rel. Killeen* v. *Angle,* (109 N. Y. 564) that the law could not apply to the

department of public works for the reason that the Constitution, as then in force, vested in the head of that department the exclusive power and duty of appointment and removal, and that any restriction upon such power imposed by the legislature, through the Civil Service Act, was inoperative. That case did not hold that the Civil Service Act or any part of it was unconstitutional. The power of the legislature to enact the law, as it appears on the statute book, has never been doubted or questioned, and the only point raised in that case was with respect to its application to a particular department of the state government under the Constitution as it then existed, and it was held that, notwithstanding the general language and scope of the act, and the purpose of the legislature in enacting a general law, without excluding any department from its operation, the law could not reach the superintendent of public works, for the reason that the words of the Constitution would not permit it. If the fundamental law which governed the question then before the court is same now, it is quite clear that the order in this case should be reversed, since the same question is involved. But it is apparent that the Constitution has been changed in such a manner as to include within the scope and operation of the Civil Service Law just such a case as this court then held to be beyond its application. This clearly appears, not only from the plain words since incorporated into the Constitution, but from the debates on the subject in the recent Constitutional Convention. The new or amended and revised Constitution of this state, adopted by the people in 1894, and which went into effect on the first day of January, 1895, has superseded the decision in the case of *The People* v. *Angle* (*supra*). It is quite true that the identical words of article five, section three, upon which that decision turned, are still in the Constitution. Instead of changing the language or arrangement of the different provisions of that article, the convention adopted, and the people have inserted and added an entirely new section, which reads as follows:

"Appointments and promotions in the civil service of the

state, and of all the civil divisions thereof, including cities and villages, shall be made according to merit and fitness, to be ascertained, so far as practicable, by examinations, which, so far as practicable, shall be competitive.  *  *  *  Laws shall be made to provide for the enforcement of this section." (§ 9.) The provisions of the article with respect to the powers and duties of the superintendent of public works in the appointment and removal of persons employed in the care and management of the canals, which were under consideration in the case of *The People* v. *Angle*, must now be read and understood in connection with this new section, and, reading them all together, there can be little doubt that the obstacles then found to exist to the full operation of the Civil Service Law in every department of the state government have been entirely removed. (*In re Smith* v. *Supervisors*, 148 N. Y. 187, 193.) That such was the intention of the convention that framed and adopted the amendment is clear beyond all question. If anything in support of this view is wanting, beyond the broad and comprehensive words of the amendment itself, it will be found in the debates on this subject in the convention, in which the intention of that body was declared in the most explicit terms, to bring every department of the government within the operation of the law by such a change in the Constitution as would meet and obviate the difficulties pointed out by this court in the case referred to. The declared views in favor of that course by some of the leading members of the convention are to be found in the learned opinion below, and the whole discussion on the question leaves no doubt of the intention to remove every constitutional objection to the full operation of the law, and to its application to all appointments in the civil service in all the public departments of the state. There was no provision in the Constitution of 1846, or in any of its numerous amendments, requiring appointments in the civil service to be made according to a general system based upon merit and fitness to be ascertained by competitive examinations under public authority. That is a conception of comparatively recent date with us, and a step in the line of admin-

istrative reform which had forced itself upon public attention, until it finally received practical approval and recognition by the passage of the act of 1883. The operation of that act, the obstacles in the way of its general application, as well as the general merits and advantages of the system to the public service, were all familiar to the members of the convention of 1894, called to revise the Constitution, and it cannot be doubted that the intention was not only to permit, but to require, its general application to appointments in all departments. This result has been effectually accomplished by the adoption of a new provision in the fundamental law. The principle that all appointments in the civil service must be made according to merit and fitness, to be ascertained by competitive examinations, is expressed in such broad and imperative language that in some respects it must be regarded as beyond the control of the legislature, and secure from any mere statutory changes. If the legislature should repeal all the statutes and regulations on the subject of appointments in the civil service the mandate of the Constitution would still remain, and would so far execute itself as to require the courts, in a proper case, to pronounce appointments made without compliance with its requirements illegal.

It is, therefore, apparent that a new principle, far reaching in its scope and effect, has been firmly imbedded in the Constitution. Like many other reforms, this work has not been accomplished without a long and persistent struggle. The friends and the opponents of the measure have debated its merits and the difficulties in the way of its practical and harmonious operation before the public for years. The considerations which entered largely into this debate are no longer pertinent, since the principle has become an accomplished fact and placed by the people beyond the possibility of any substantial change in a contrary direction. This court, upon more than one occasion, has, with entire unanimity, expressed its approval of the principle, and exercised all of its powers in every proper case in aid of all laws intended to carry out the idea which was always at the foundation of the question.

(*Rogers* v. *Common Council of Buffalo*, 123 N. Y. 173; *Peck* v. *Belknap*, 130 N. Y. 394; *In re Keymer*, 148 N. Y. 219.) Whatever doubt or distrust may exist with respect to the possibility of obtaining for the law an honest and fair execution, there is none and can be none, at least among thinking men, with respect to its ultimate beneficial effect upon the service. That it must, if fairly and honestly administered, go far to suppress very grave evils and abuses that have become peculiarly rife and active in our political system few intelligent people who have given the subject much attention can doubt. In so far as its administration may depend upon the action of the judicial department, it is entitled to, and doubtless will, receive a fair and liberal construction, not only according to its letter, but its true spirit and the general purpose of its enactment. The Constitution, as it now exists, must be read and considered in all its different parts, and each provision must be given its appropriate place in the system and some office to perform, and at the same time all must be so construed as to operate harmoniously. The application of these familiar rules of constitutional construction removes all doubt or difficulty with respect to the question under consideration, and the conclusion must follow that, while the power of appointment and removal is still with the superintendent of public works, it is subject to legislative regulation as to the mode and manner, and is brought within the operation of general laws on that subject.

There is another question in the case which is pressed with much vigor by the learned counsel for the relator. He contends, as I understand his position, that the new section of the Constitution referred to contemplated the enactment of appropriate laws to carry it into effect, and that, since the Civil Service Act of 1883 and its amendments did not, and, when passed, could not apply to the department of public works, they cannot now be made to operate upon the appointments of public officers formerly beyond the power of legislative regulation. In other words, that the new section of the Constitution is not self-executing, and, as the Civil Service

Law has not been re-enacted since the change or any other legislation supplied, there is now no law or regulation applicable to the relator's appointment save the will of the superintendent himself.

We do not think that this contention is at all tenable. The act of 1883 and its amendments constitute a general system in terms applicable to the whole service. It is not limited to any particular department, but is broad enough to embrace all. Statutes of this character, framed in general terms, apply to new cases as they arise from time to time that fall within their general scope and policy. Since the enactment of the civil service laws new offices have been created, to which the power to appoint subordinates attached, but it cannot be doubted that this power, when given, came within the operation of all general regulations on the subject. A general law may, and frequently does, originate in some particular case or class of cases which is in the mind of the legislature at the time, but, so long as it is expressed in general language, the courts cannot, in the absence of express restrictions, limit its application to those cases, but must apply it to all cases that come within its terms and its general purpose and policy. So, a general law, when passed, may be incapable of application to certain cases within its general scope and policy by reason of the existence of other and conflicting enactments of equal or higher authority, but when the latter are repealed or modified, the general law is given full operation. In the present case it will be observed that there is nothing in the Civil Service Act indicating any intention to exclude any department from its operation. On the contrary, it was manifestly intended to have general operation and not, until the decision of the courts in *The People* v. *Angle*, was it understood to be inapplicable to the department of public works. The section of the Constitution with which it was then found to be in conflict, and which had the effect to suspend its operation as to that department, having been since modified in such a manner that both the organic law and the general statute are in harmony, each expressing the same general policy and direct-

ing the same thing to be done, the suggestion that, in order to make the general law operate upon this case, the legislature must re-enact it, has no reasonable or just foundation, and, so far as I am aware, is not sustained by authority.

Moreover, it is evident from the language of the new provision of the Constitution and from the debates in the convention which followed its introduction into that body, that it was framed and adopted with reference to existing laws, which were intended to give to it immediate practical operation. So that in adopting the new Constitution, the people, in their original capacity, decreed that, thereafter, all the departments of the government should be brought within the operation of existing laws on the subject of appointments. The mandate to the legislature to enact laws to provide for the enforcement of the section does not in any degree conflict with this view. That was a prudent and proper, though, perhaps, an unnecessary precaution. But it affords no ground for the inference that the people intended to ignore the aid and utility of existing laws to give immediate practical effect to the principle, or that they were content to wait for the reform until the legislature should make new regulations on the subject. It was the intention to put all the new provisions of the Constitution into operation through the instrumentality of such laws as were then in force, so far as practicable, and if, in practice, they were found to be in any respect insufficient for that purpose, they were to be replaced or supplemented by new ones. This view does not depend entirely upon construction, since the instrument itself contains an express provision on that subject. The people declared in section sixteen of article one that " Such acts of the legislature of this state as are now in force shall be and continue the law of this state, subject to such alterations as the legislature shall make concerning the same; but all such parts of the common law, and such of the said acts, or parts thereof, as are repugnant to this Constitution, are hereby abrogated."

If the act of 1883 or any of its amendments needed new life and vigor, in order to bring this case within their opera-

**370** . People ex rel. McClelland *v.* Roberts. [Feb.,

Dissenting opinion, per Martin, J. [Vol. 148.

tion, it has thus been given to them by an authority from which even the legislature itself has derived all of its powers. All these questions, and others of a minor character, have been so thoroughly examined in the court below, upon the hearing of the original application, that in our opinion further discussion is unnecessary.

Our conclusion is that, since it appears that the position to which the relator was appointed had, prior to that time, been classified by the civil service commission, in pursuance of the statute, as one subject to competitive examination, and as the commission had not certified to the comptroller that he had been lawfully appointed, but, on the contrary, refused the certificate, his application for the writ of mandamus was properly denied, and that the order appealed from should be affirmed, with costs.

Martin, J. (dissenting.) That chapter 354 of the Laws of 1883, so far as it related to the department of public works, was held by this court to be unconstitutional and void in the *Killeen* case (109 N. Y. 564), is manifest from the opinion, and admitted by the respondent. If this statute was unconstitutional, and consequently void when passed, so far as it applied to that department, I am unable to agree to the proposition that the constitutional amendment which went into effect January 1, 1895, revived or infused new life into it and rendered it valid. It makes no difference that it was only void in part, for so far as it was void it had no effect, and could not be rendered valid except by re-enactment. Judge Cooley, in his work on Constitutional Limitations, at page 188, says: "When a statute is adjudged to be unconstitutional, it is as if it had never been. Rights cannot be built up under it; contracts which depend upon it for their consideration are void ; it constitutes a protection to no one who has acted under it, and no one can be punished for having refused obedience to it before the decision was made. And what is true of an act void *in toto* is true also as to any part of an act which is found to be unconstitutional, and which, consequently, is to be regarded as having never, at any time, been possessed of

1896.]      People ex rel. McClelland *v.* Roberts.      **371**

N. Y. Rep.]      Dissenting opinion, per Martin, J.

any legal force." That language was quoted and approved by this court in *Chenango Bridge Co.* v. *Paige* (83 N. Y. 178, 191). (See Endlich on Interpretation of Statutes, § 538; *Meagher* v. *The County of Storey*, 5 Nev. 244, 250; *Sumner* v. *Beeler*, 50 Ind. 341, 342; *Woolsey* v. *Dodge*, 6 McLean, 142; *Astrom* v. *Hammond*, 3 McLean, 107, 110; *Strong* v. *Daniel*, 5 Ind. 348; *Clark* v. *Miller*, 54 N. Y. 528, 532.) The statute of 1883, having been declared unconstitutional and void so far as it affected the department of public works, was invalid and had no existence so far as it related to that department. To that extent it was as if it had never been enacted. It being so far void, I think the subsequent amendment infused no life into it as to that department. It was so held in *State ex rel.* v. *Tufly* (20 Nev. 427) and in Opinions of Attorneys-General of the State of New York for 1871 (pg. 566). I am aware of no principle upon which it can be held that this statute became valid by the subsequent constitutional amendment, unless the amendment was self-executing. That it was not seems manifest, as, after providing for civil service appointments and promotions, it expressly declares that "laws shall be made to provide for the enforcement of this section." This provision is inconsistent with and negatives the idea that the amendment was self-executing, or that it was intended to re-instate a statute already declared to be unconstitutional. The logic of the position that the Constitution, before it was amended, simply obstructed or suspended the statute of 1883 as to the department of public works, and that the amendment removed the obstruction and leaves the statute in full force, is not apparent to me. That argument seems to me fallacious. If any constitutional obstruction existed which prevented the enactment of a statute including the department of public works in the provisions of the Civil Service Act, it was so complete as to render the statute to that extent unconstitutional and void. As to the department of public works, the statute was either valid or void. If valid, it could have been enforced when passed; if void, it could not, and the amendment effected no change that would render the statute valid.

Again, if it be said that the decision in the *Killeen* case was based upon the theory that the legislature did not intend to include the department of public works in the statute of 1883, because it would be in conflict with the Constitution, then the statute did not affect that department. If that was the intent of the legislature, I know of no principle by which an amendment of the Constitution would breathe into that statute an intent which never existed.

If the legislature never intended to pass such a statute, its intent must govern, and the statute of 1883 should not be regarded as applicable to the department of public works. If it did intend to include that department, then it violated the Constitution and was so far null and void. Therefore, whatever view may be taken of the question, it seems to me that it cannot properly be held that the statute is applicable to the department of public works.

I think the judgment of the General and Special Terms should be reversed.

All concur, with O'BRIEN, J., for affirmance, except MARTIN, J., who reads for reversal; VANN, J., not voting.

Order affirmed.