In the Matter of the Application of HUGH J. NEARY, Petitioner, against JAMES P. O'CONNOR and Others, Judges of the City Court of Rochester, New York, Respondents.

Supreme Court, Monroe County, March 28, 1940.

*John J. Scully* [*William H. Tompkins* of counsel], for the petitioner.

*William H. Emerson, Corporation Counsel* [*Sam Di Pasquale, Assistant Corporation Counsel*, of counsel], for the respondents.

LAPHAM, J.  This is a proceeding under article 78 of the Civil Practice Act which seeks a reinstatement of the petitioner to the office of judge's clerk of the Criminal Branch of the City Court of the City of Rochester, New York.  The petitioner was appointed without a competitive examination to the position of judge's clerk by Judges TOMPKINS, GITELMAN and MIX as a majority of the judges of the City Court of Rochester on June 22, 1936.  After serving continuously from that time until December 31, 1939, he was dismissed from office on January 2, 1940, by the judges of the City Court.  On January 3, 1940, the petitioner through his attorney demanded the restoration of his office on the ground that he

was an exempt volunteer fireman, protected by section 22 of the Civil Service Law against summary discharge. No charges of misconduct or incompetence in office were made against the petitioner or assigned as a reason for his dismissal.

The position of judge's clerk in the Criminal Branch of the City Court to which the petitioner was appointed was created by the city manager on June 20, 1936. Prior to that time and on April 1, 1935, the city manager created two positions of city judge's clerk. On April 26, 1935, the municipal civil service commission of Rochester by resolution classified these positions in the exempt class of civil service and on June 1, 1935, the State Civil Service Commission formally approved such classification. On April 24, 1935, the city manager created another position of city judge's clerk for a temporary period of three months, and on June 25, 1935, this office was made permanent.

The petitioner contends that he was improperly removed from office because no charges of misconduct or of incompetence were ever brought against him and no hearing was ever accorded him in obedience to the mandate of the statute. The respondents contend that the petitioner is not entitled to invoke the protection of the Civil Service Law. The pivotal issue in this proceeding is whether the petitioner was at the time of his dismissal in the exempt class of civil service. A municipal employee may be shielded from competition in the exempt class either by direct statutory command (Civil Service Law, § 13, subd. 3) or by the action of the local civil service commission in adopting rules for the classification of positions which are approved by the mayor or by the other duly authorized appointing authority of the city and by the State Civil Service Commission. (Civ. Service Law, § 11, subd. 2.) Subdivision 3 of section 13 of the Civil Service Law places in the exempt class: " One clerk, and one deputy clerk if authorized by law, of each court, and one clerk of each elective judicial officer, and also one deputy clerk, if authorized by law, of any justice of the Supreme Court." The words " one clerk of each elective judicial officer " clearly connote a private or confidential clerk. It is clear that the petitioner was not a confidential clerk or a clerk assigned exclusively to an individual judge. His title of judge's clerk is not decisive of his status as a clerk of an elective judicial officer. Whatever its powers elsewhere may be, a title does not determine the character of a position where the duties of the incumbent make the name of the office incongruous and inappropriate. The nature of the duties and not the name under which they are performed is the decisive criterion in determining the classification of a position in the civil service. (*Matter of Byrnes* v. *Windels*, 265 N. Y. 403, 406; *Matter of Friedman* v. *Finegan*, 268 id. 93, 98.)

There is no dispute between the parties over the duties which the petitioner performed as judge's clerk. He kept and made entries in the docket book of the court containing original charges against criminal defendants and in the docket book containing the list of adjourned cases. He was present in court when cases were called and made notes of the disposition of each action. He received fines when the court was in session and remitted them to the clerk of the court. He prepared and signed certificates of conviction and attested affidavits on informations made by complainants.

The confidential or the private had no place in these duties. None of the judges had even a shadow of any proprietary control over the petitioner and none could claim him as his own individual clerk. The elements of personal rapport between judge and clerk and the confidence and trust which are the distinctive attributes of the relationship between a judge and his clerk were conspicuously absent. His duties were public, as distinguished from private and confidential, in character. The petitioner served the whole court and no one of the individual judges comprising it.

The petitioner, in order to justify his classification in the exempt class of civil service, must, therefore, rely on the action taken by the municipal and State Civil Service Commissions. Statute and decisions alike concur in requiring the approval of the State Civil Service Commission before a classification made by a local commission is legally valid. (Civil Service Law, § 11, subd. 2; *Matter of Amann* v. *Finegan*, 253 App. Div. 364; *Matter of Conklin* v. *Board of Child Welfare*, 254 id. 637.)

A brief chronology of the facts is necessary in order to set this issue in its proper perspective. In April, 1935, the municipal civil service commission placed two positions of judge's clerks in the exempt class of the city civil service, and in June, 1935, the State Civil Service Commission approved such classification by formal action. After the appointment of the petitioner on June 22, 1936, a certificate of his appointment was filed with the municipal civil service commission. His name was carried on the roster of the commission for the classified city service in the class marked " exempt " from the time of his appointment until his dismissal. The commission in its annual report to the State Civil Service Commission summarized the roster of the city's classified service and included in the total number of employees in the exempt class during the years 1936 to 1939, inclusive, the four positions designated as judge's clerks in the Criminal Branch of the City Court. On each of the payrolls for the City Court the municipal civil service commission certified through its secretary that all the persons, including the petitioner, who were named on the payroll

were appointed to their positions under the Civil Service Law, with certain exceptions.

On these facts the conclusion seems inescapable that the petitioner has failed to sustain the burden resting on him to show that he was lawfully classified in the exempt class of the civil service. No formal action placing the petitioner in the exempt class was ever taken by either the municipal or by the State Civil Service Commission, and whatever informal action was taken by the municipal commission in carrying the petitioner in the exempt class had no legal efficacy without the approval of the city manager and of the State Civil Service Commission. (Civil Service Law, § 11, subd. 2.) The fact that the State Civil Service Commission had formally approved the classification of the two positions of judge's clerks as exempt did not throw around the petitioner the same immunity from competition granted by such formal action. The creation of one special privilege does not in the law automatically generate another.

The only act of the State Civil Service Commission which can in any degree be considered as an assent to the classification of the petitioner's position adopted by the municipal commission was the acceptance of the annual report of the municipal civil service commission which carried the four judges' clerks in the exempt class. Acquiescence there may have been on the part of the State Civil Service Commission but it was an acquiescence indulged without, so far as the facts uncovered in this proceeding show, a full knowledge of all the relevant circumstances. The correspondence between the municipal and the State Civil Service Commissions conclusively shows that the State Commission approved the resolution of the local commission placing the two positions of judge's clerks in the exempt class only on the understanding that such clerks were to be considered as clerks to an elective judicial officer within the meaning of subdivision 3 of section 13 of the Civil Service Law, and at the time of such approval there was a clear intimation that additional clerks might be needed in the future. When, therefore, two more clerks including the petitioner were added and the local commission reported the existence of this number in the exempt class, the State Civil Service Commission may have assumed, with complete justification, that the understanding originally made was being fulfilled. The papers before me on this application do not show whether the State Civil Service Commission was ever informed of the nature of the duties performed by the petitioner and, without some definite intimation of the conflict between these duties and the title to the petitioner's office, there was an absence of that full knowledge which is required before acquiescence or

inaction may be construed as an acceptance or approval. In any event, the approval made mandatory by the Civil Service Law cannot be rested on a foundation so insecure, nor can the integrity of the civil service be so easily invaded and broken

The appointment of the petitioner without a competitive examination was illegal and such illegality was never subsequently purged in compliance with the statute. Exemption from competition for civil service positions is the exception and not the rule. (*Matter of Andresen* v. *Rice*, 277 N. Y. 271, 276; *Matter of Friedman* v. *Finegan, supra.*) The good faith of the appointing officer and the appointee avails nothing in the face of the overriding constitutional mandate that appointments to the civil service shall be made on merit and fitness ascertained through competitive examinations. (State Const. art. V, § 6.) The courts as well as the Legislature and the Civil Service Commissions, State and municipal, must bow to the constitutional mandate. (*Palmer* v. *Board of Education,* 276 N. Y. 222; *Matter of Carow* v. *Bd. of Education,* 272 id. 341, 344; *Matter of Friedman* v. *Finegan, supra; People ex rel. McClelland* v. *Roberts,* 148 N. Y. 360, 366.)

In *Palmer* v. *Board of Education* (*supra*) Judge LEHMAN spoke of the paramount command of the constitutional provision in these terms: " An employment which in its inception violates the provisions of the Constitution is illegal and against public policy, regardless of the good faith of the parties. It is the duty of the appropriate administrative officers of the State or its civil divisions to discontinue an illegal employment when they note its illegality, and if rights based upon such employment are asserted in the courts, the legality of the appointment should not go unchallenged by public officers; but regardless of whether the legality is challenged or not, a court must refuse to sanction such an employment which violates the mandate of the Constitution whenever the illegality becomes apparent to it " (p. 226). That duty falls on this court. The petitioner was not appointed in accordance with the mandate of the Constitution and the Civil Service Law. He was, therefore, subject to removal at will. *Matter of Scahill* v. *Drzewucki* (269 N. Y. 343, 346.) It would certainly be a strange anomaly if the petitioner, who was illegally appointed without an examination under the Civil Service Law, could successfully invoke the protection of the statute which his appointment had in the first instance transgressed.

The good faith of the judges who appointed the petitioner and the assumptions of the judges who appointed his successor are alike mmaterial in the face of the avowed public policy that a position where the duties are essentially public, shall be filled after a com-

petitive examination. The petitioner's successor no less than the petitioner himself cannot rely on a tenure of office protected by the Civil Service Law because his appointment in the exempt class of civil service is unlawful under the logic of this decision. He, like his predecessor, is subject to removal at will until there has been a compliance with the provisions of the Civil Service Law.

The petitioner contends that the validity of his position in the exempt class cannot be directly attacked in this proceeding and cites the case of *Chittenden* v. *Wurster* (152 N. Y. 345) in aid of his contention. The *Chittenden* case and the other decisions stemming from it enunciate the rule that the proper method of contesting the validity of a classification of the civil service is a proceeding in the nature of mandamus directed against the classifying officer or body. I do not regard those cases as throwing up barriers to a determination of the validity of the petitioner's status in this proceeding. In those cases an officer or agency duly authorized to make a classification had actually classified a position. Here, on the contrary, the officials and the agency vested by law with the power to classify had failed to make a classification of the petitioner's office in accordance with the mandate of the statute. (Civ. Service Law § 11, subd. 2.) The rule that the discretion of a classifying body or officer cannot be reviewed in a proceeding of this kind cannot be invoked where there has been no exercise of discretion at all by those vested with the power to act.

The application of the petitioner for an order directing his reinstatement as judge's clerk in the Criminal Branch of the City Court of the City of Rochester is denied, without costs.

Let order enter accordingly.