MAX BERNSTEIN, Plaintiff, *v.* DOMINICK STRAMMIELLO et al., Defendants.

Supreme Court, Trial Term, Kings County, April 28, 1952.

*Louis Woolf* and *George Grabow* for plaintiff.

*Rudser & Mulligan* for Dominick Strammiello and another, defendants.

*Norman Lustig* for Robert Metrick Co., Inc., defendant.

HART, J. Plaintiff, on October 31, 1950, while employed on a construction job, was struck on the head by a falling cinder block. He was rendered unconscious and was hospitalized until November 13, 1950. As a result of the accident, plaintiff sustained a severe cerebral concussion, partial loss of hearing, a post-traumatic anxiety state and post-traumatic epilepsy resulting in frequent " blackouts ". He has been under constant medical care and attention of his physician who is of the opinion that plaintiff has been totally disabled since the date of his accident and that the prognosis is doubtful. Plaintiff's physician in an affidavit has detailed the repeated and frequent visits which have recurred since the time of the accident. As a therapeutic measure, plaintiff was permitted to endeavor to resume his employment as a plumber but, due to his dizziness and severe headaches, he was constrained to desist.

Plaintiff resides with his wife and two children, a girl of nineteen and a boy of fourteen. The girl is unemployed and the boy attends school. From the time of his injury on October 31, 1950, until sometime in December, 1951, the family subsisted on the $32 weekly award made to plaintiff by the Workmen's Compensation Board. The compensation has been discontinued since December, 1951. Plaintiff has no income and his funds have been exhausted. In corroboration of this, plaintiff, at the direction of the court, has submitted transcripts of his savings accounts which show that no funds remain therein. Furthermore, he has borrowed $2,000 from his sister.

Plaintiff is the owner of a three-family house in which he and his family occupy an apartment. When fully rented, the yield from the other apartments approximates the cost and maintenance of the building. The property is appraised at $7,000 and assessed at $7,200, and is subject to a mortgage of only $881.27.

Plaintiff is also the owner of a Willys station wagon purchased in 1948 for the sum of $2,000 which he used in going to and coming from work. He asserts the money for the purchase of this vehicle was borrowed from his mother-in-law and was to be repaid to her at the rate of $10 a week and that he still owes her about a thousand dollars. In corroboration of this assertion, plaintiff has submitted, at the court's direction, a letter from the bank in which his mother-in-law has funds on deposit setting forth that withdrawals of $1,300 and $550 were made on August 17, 1948, and August 23, 1948, respectively.

Prior to his accident plaintiff, according to his sworn statement earned $172 a week.

Plaintiff now moves for a preference in the trial of this action to recover damages for the personal injuries alleged to have been sustained by him by reason of the negligence of the defendants.

Counsel for defendant Robert Metrick Co., Inc., frankly states that he believes the application has merit and joins therein. Counsel for the other defendants oppose the preference stating " there is no proof presented with these motion papers to show either that plaintiff has applied for welfare relief or that he is receiving such relief."

It would appear, in view of plaintiff's ownership of a motor vehicle and his equity in the real property which might be readily mortgaged or sold, that he might not be eligible for public assistance. The court is mindful of the holdings that preferences should not be granted unless the showing of desti-

tution is " complete," the effects of which are that the destitution be of such a character that the party is either a recipient of public assistance or " is no longer able to sustain life except as a public charge ". (*Knollwood Cocktail Lounge* v. *Esdo Bldg. Corp.,* 15 N. Y. S. 2d 951, 952; see, also, *Goldin* v. *Malone Dairy Co.,* 209 App. Div. 341.) The court, nevertheless, finds that the facts within this case come within the purview of subdivision 3 of rule 151 of the Rules of Civil Practice and its grant of authority to the court to allow a preference where " *the interests of justice* will be served ". (Emphasis supplied.) This rule does not by its terms limit the granting of preferences to those cases where death is imminent or " destitution is complete ". If the rule-making body so intended, it could have so stated. Instead, a preference is provided for where the " interests of justice will be served ".

Rule 151 of the Rules of Civil Practice was promulgated by a majority of the Justices of the Appellate Divisions in the four departments pursuant to section 83 of the Judiciary Law. The application of the rule by the constituent members of the rule-making body, however, has resulted in conflicting and inconsistent results in the various departments. The First Department apparently has denied preferences in those cases where plaintiffs were indigent prior to the occurrence which caused the injuries. (*Magdalenski* v. *Simon,* and *Warner* v. *8th Ave. Coach Corp.,* N. Y. L. J., April 13, 1951, p. 1349, col. 1; *Hempel* v. *Eden Cab Corp.,* N. Y. L. J., April 12, 1950, p. 1281, col. 2; *Bogossian* v. *Third Ave. Transit Corp.,* 271 App. Div. 820.) With the exception of *Scott* v. *Atlantic Taxi Corp.* (N. Y. L. J., Mar. 30, 1951, p. 1154, col. 5 [Di Giovanna, J.]) citing the *Bogossian* case, the authorities in the second department have held that where plaintiff had been on home relief prior to the accident and was still receiving public assistance, the showing of destitution was complete and a preference must be allowed. (*Auchello* v. *Brooklyn Bus Corp.,* 257 App. Div. 857; *Preis* v. *Momrow,* N. Y. L. J., Jan. 24, 1950, p. 295, col. 5 [Walsh, J.].) Where the court found that the plaintiff was on home relief since the accident but that he was employable and his indigence only temporary (*Brown* v. *Gelat,* N. Y. L. J., Oct. 6, 1950, p. 729, col. 1 [Walsh, J.]), the denial of a preference was reversed as an improvident exercise of discretion (277 App. Div. 1140). In the third department, on the other hand, being a recipient of home relief does not entitle a party to a preference as a matter of right (*Ploof* v. *Somers,* 277 App. Div. 1076).

It follows as a consequence of these conflicting decisions that at least one construction of the rule is incorrect and results in effect in a rescission of the rule adopted by the majority of the Justices of the four Appellate Divisions.

Subdivision 3 of rule 151 does not by its terms limit the granting of a preference to those cases where plaintiff's destitution is " complete ". In fact the word " destitution " nowhere appears in the rule. If the rule-making body intended to make destitution the criterion it could have unequivocally so provided. The conflict of opinion between the various Appellate Divisions as above demonstrated appears to indicate that such was not the intention.

A rule of Civil Practice promulgated pursuant to section 83 of the Judiciary Law has the force and effect of a statute (*Boyer* v. *Boyer,* 129 App. Div. 647; *Matter of Warde,* 154 N. Y. 342).

In construing a rule of practice, it would appear that the same approach should be used as that in the construction of a statute. The rule as noted does not speak of " destitution " but of " interests of justice."

Authorities tell us " A general law may, and frequently does, originate in some particular case or class of cases which is in the mind of the legislature at the time, but, so long as it is expressed in general language, the courts cannot, in the absence of express restrictions, limit its application to those cases, but must apply it to all cases that come within its terms and its general purpose and policy." (*People ex rel. McClelland* v. *Roberts,* 148 N. Y. 360, 368 quoted in the majority opinion in *Matter of Di Brizzi* [PROSKAUER], 303 N. Y. 206, 214.) Paraphrased, this thought appears in *Lawrence Constr. Corp.* v. *State of New York* (293 N. Y. 634, 639) as follows: " A statute must be read and given effect as it is written by the Legislature, not as the court may think it should or would have been written if the Legislature had envisaged all the problems and complications which might arise in the course of its administration."

In construing the expression " interests of justice " it should be borne in mind that this connotes the exercise of judicial discretion. An excellent dissertation on the meaning of this phrase is found in *United States* v. *National City Lines* (7 F. R. D. 393, 397 [U. S. Dist. Ct., S. D., Calif., 1947, YANKWICH, D. J.]). There the court had before it a motion for a change of venue of a criminal action wherein defendants moved pursuant to subdivision (b) of rule 21 of the Federal Criminal Rules of Procedure which reads: " The court upon motion of the defendant shall transfer the proceeding as to him to another district or

division, if it appears from the indictment or information or from a bill of particulars that the offense was committed in more than one district or division and if the court is satisfied that in the interest of justice the proceeding should be transferred to another district or division in which the commission of the offense is charged.'' At page 397, the court wrote:

'' What is ' in the Interest of Justice '? The phrase ' in the interest of justice,' like the analogous one which occurs often in statutory enactments, ' in the furtherance of justice,' has a broad meaning. It implies conditions which assist, or are in aid of or in the furtherance of, justice. Both call for the doing of things which bring about the type of justice which results when law is correctly applied and administered. *They import the exercise of discretion* which considers both the interests of the defendant and those of society. When commanded by a statute, they do not attempt to determine, in advance, the type of judicial action to be taken. As said by the Supreme Court in a well-known case: *' The term '' discretion '' denotes the absence of a hard and fast rule.* The Styria v. Morgan, 186 U. S. 1, 9, 22 S. Ct. 731, 46 L. Ed. 1027. *When invoked as a guide to judicial action it means a sound discretion, that is to say, a discretion exercised not arbitrarily or willfully, but with a regard to what is right* and equitable under the circumstances and the law, and directed by *the reason and conscience of the judge to a just result.'* (Langnes v. Green, 1931, 282 U. S. 531, 541.) '' (Emphasis supplied.)

It is difficult to understand how it can be maintained that it is in '' the interests of justice '' to grant a preference to those whose status has not changed as a result of the accident, i.e., in the case of those who were on home relief before the accident and thereafter continue on relief and deny a preference to those who were never on relief but whose financial status has been changed drastically as a result of receiving permanent injury or protracted disability.

In the former case the plaintiff's income (relief allowance) continues. In the latter it ceases and dire consequences and hardship ensue as a result of prolonged delay.

The right of those in need, to relief, is written into our laws and no stigma attaches to those who avail themselves of it. It does not follow, however, that only such persons are entitled to a speedy determination of their rights in a negligence action. If such interpretation of the rule be adhered to, it would result in discrimination against that part of our citizenry who either as a result of good fortune or conscientious endeavor, manage

to provide for themselves and families without public assistance. In the latter class are those who have invested part of their earnings in the purchase of homes and have children in college or professional schools. A permanent or protracted injury to the head of such a family would result in a complete cessation of income, without any decrease in the amount necessary for subsistence, with the added expense of hospitalization and medical care. Are "the interests of justice" served by denying to such a plaintiff a preference? Is it "just," that because of such denial he be compelled to sell his home, possibly at a sacrifice, and even worse to withdraw his children from college or professional schools to which, after the trial, four years later they probably would not return, or to surrender his life insurance policies for their cash value? In other words, is it in "the interests of justice" to tear down all the hopes and aspirations of such an individual for himself and his family by denying him an early trial which, if it results favorably, will enable him and his family to maintain the *status quo*?

In the instant case, do the "interests of justice" require that plaintiff in the face of the present housing crisis be compelled to sell and exhaust his equity in his home, dispose of his car and thereafter apply for home relief before the court may afford him an early trial?

It has been stated that granting preferences in cases other than those in which "complete destitution" has been shown constitutes an "improvident" exercise of discretion because it deprives other litigants of the right to a trial in the regular order. It is apparent that every preference effects the same result. The very use of the word "preference" presupposes an advantage to the one entitled thereto as against all others.

Experience in pretrial and classification has demonstrated that all cases, even though properly brought in the Supreme Court, are not in the same category. Not all cases involve permanent injuries and protracted disabilities which cut off the plaintiff's income during the entire time that the case is on the regular calendar awaiting trial, and during which time his ordinary living expenses continue and additional expenditures are necessary for medical attention. Most of the cases involve lesser injuries, which though serious enough to justify retention on our calendar, do not result in protracted or permanent disability. In many of these cases the plaintiff has returned to work long before the case is reached for trial in its regular order. It is obvious that the "interests of justice" require that the former be preferred over the latter class of cases.

If, however, preferences are to be limited to cases where plaintiff is on, or eligible for, home relief, rule 151 should be amended by eliminating the words " interests of justice " and substituting therefor such language as will effect such limitation. Until it is so amended the court in its proper exercise of discretion will be impelled to give to the words " interests of justice " their natural and generally accepted meaning.

It does not appear reasonable that the problem should be approached by the contention that other litigants on the calendar are entitled to a trial in the regular course and that their rights are affected by the granting of " improvident " preferences. If there are other litigants whose physical well-being and financial status have been as adversely affected as plaintiff's, they, too, should be granted relief in the form of an early trial upon a proper application therefor. Each application for a preference should be left to the court's discretion for determination in accordance with the maxim that a court has the inherent power to control its own calendar. (*Smith* v. *Keepers,* 66 How. Prac. 474, 476; *Matter of McDonald* v. *Goldstein,* 191 Misc. 863, 868, affd. 273 App. Div. 649; *Ploof* v. *Somers,* 277 App. Div. 1076, *supra*; *Gladstone* v. *Killian,* 278 App. Div. 736.) This is in accord with the construction of the expression " interest of justice " as apodictically defined in *United States* v. *National City Lines* (*supra*).

With the conclusion that the phrase " interests of justice " imports the exercise of discretion by a court, it follows that such exercise should not be disturbed merely because it is deemed that it was " improvident ". It seems incongruous and anomalous that the exercise of discretion by an administrative body or officer may not be interfered with unless it appears that it was " arbitrary and capricious " (*Matter of Park East Land Corp.* v. *Finkelstein,* 299 N. Y. 70, 75), while the approach to the propriety of the granting of a preference by the Supreme Court is by the means or test as to whether or not the exercise of the discretion was " provident ".

The motion for a preference is granted and the case set down on the day calendar for the 23rd day of May, 1952. Submit order.