Sidney A. Fine, J.
Petitioner, Charles E. Sigety, doing business as Florence Nightingale Nursing Home, seeks a judgment (1) restraining the respondent from proceeding in excess of his lawful jurisdiction and (2) quashing a subpoena ad testiñeandum and duces tecum issued by the respondent, Charles J. Hynes, Deputy Attorney-General of the State of New York (Special Prosecutor), on or about April 7, 1975. As noted on the face of the subpoena, petitioner’s testimony and records are sought "in an inquiry into the management, control, operation and funding of nursing homes, care centers, health facilities and related entities located in the State of New York, and the principals, agents, suppliers and other persons involved therewith being conducted by the Deputy Attorney-General (respondent) pursuant to Section 63[8] of the Executive Law of the State of New York, and the Executive Order of Governor Hugh Carey dated 7, February 1975”. Parenthetically, Hollis S. Ingraham, Commissioner of Health of the State of New York and Abe Lavine, Commissioner of Social Services of the State of New York by respective correspondence dated December 19, 1974, requested Louis J. Lefkowitz, New York State Attorney-General, pursuant to subdivision 3 of section 63 of the Executive Law, to investigate and *650 prosecute the alleged commission of any indictable offenses relating to their departments by nursing homes or related facilities. The respondent is serving as Deputy Attorney-General by virtue of his appointment to that position by the Attorney-General (see Attorney-General’s letters of Jan. 10, 1975 and Feb. 13,1975; Executive Law, §§ 62, 63, subd 8).
Admittedly on January 13, 1975, Hon. George Roberts, Acting Justice of the Supreme Court, County of New York, impaneled a Grand Jury for special investigations into criminal activities in New York County. This Grand Jury, impaneled under the authority of an Appellate Division order dated December 19, 1974, was created specifically to conduct an investigation into the nursing home industry and related entities in New York County. Subpoenas have been issued in conjunction with that Grand Jury investigation and the enforcement of such a subpoena through contempt proceedings initiated by the Special Prosecutor, has recently been ordered in a well-reasoned opinion of Mr. Justice George Roberts (Matter of Hynes [Moskowitz] NYLJ, May 9, 1975, p 17, col 8).
The April 7, 1975 subpoena requiring the petitioner’s testimony also, by annexed schedule, itemizes 51 separate categories of documents to be produced by the petitioner for each of the years 1968 through 1974. While petitioner claims such a production of what may amount to more than 50,000 documents, is unduly burdensome and oppressive, his principal attack upon the subpoena is that the respondent’s investigation, purportedly undertaken, pursuant to subdivision 8 of section 63 of the Executive Law, is nothing more than a veiled prosecution designed to circumvent rights to which petitioner would be entitled in conjunction with subpoenaed testimony, before the Grand Jury. Thus while CPL 190.40 confers immunity on persons compelled by subpoena to give testimony or produce documents before the Grand Jury, no such immunity is available to a party subpoenaed by the Special Prosecutor pursuant to subdivision 8 of section 63 of the Executive Law— the latter being afforded only such limited rights as are specified in section 73 of the Civil Rights Law.
Although respondent now argues that the primary authority for the issuance of the specified subpoena is to be found in subdivision 3 of section 63 of the Executive Law, read in conjunction with subdivision 8, subpoena power is not reposited in subdivision 3 and that section cannot supply said authority should it be lacking in subdivision 8. Subdivision 8 *651 of section 63 of the Executive Law provides in pertinent part: "Whenever in his judgment the public interest requires it, the attorney-general may, with the approval of the governor, and when directed by the governor, shall, inquire into matters concerning the public peace, public safety and public justice * * * The attorney-general, his deputy, or other officer, designated by him, is empowered to subpoena witnesses, compel their attendance, examine them under oath before himself or a magistrate and require the production of any books or papers which he deems relevant or material to the inquiry.”
In Ward Baking Co. v Western Union Tel. Co. (205 App Div 723) upon which the petitioner heavily relies, the court considered in detail the scope of the Attorney-General’s authority under subdivision 8 of section 63 of the Executive Law (then denominated as subdivision 8 of section 62). The court in Ward Baking Co. (supra) restrained the Attorney-General’s investigation into a purported homicide, upon the grounds that the investigation was beyond the authority granted by the applicable section of the Executive Law. In a rather wide ranging opinion Mr. Justice Kellogg writing for a unanimous court, observed in part (pp 729-730): "The subdivision in question was added to section 62 by chapter 595 of the Laws of 1917. That act became a law in May, 1917, within one month of the time when the United States entered the World War. It is a matter of common knowledge that at this time the State and nation required protection against the destructive plans and acts of alien enemies resident here as well as against the acts of its own disloyal citizens. There can be no reasonable doubt that the law thus enacted was fundamentally a war measure: that it was primarily designed to supply proof to the Governor of enemy activities within the borders of the State in order that by the exercise of his executive power he might suppress them. It is for this reason, it seems to us, that the investigations thereby sanctioned were limited to 'matters concerning the public peace, public safety and public justice.’ The law was designed to avert rather than to punish subversive acts. It cannot be supposed that it was intended to invest the Attorney-General with the power and duty to conduct an investigation [independent of the Grand Jury], wherever and whenever in any county of the State a crime had, in peace times, been committed by an individual.”
Petitioner argues that the subpoena which it now seeks to quash was issued within the context of a prosecutorial investí *652 gation identical in material respects to the Attorney-General’s investigation restrained by the court in Ward Baking Co. (supra). To support this argument petitioner notes that a "civil investigation” of the privately operated nursing home industry was commenced on January 10, 1975, with the Governor’s appointment of Morris B. Abram, as Special Commissioner, pursuant to section 6 of the Executive Law (More-land Act). In characterizing the simultaneous appointment on January 10, 1975, by the Attorney-General, of respondent Hynes, as a Deputy Attorney-General (Special Prosecutor), as the commencement of a "criminal investigation”, petitioner relies upon not only the background of that appointment, but also the specific language of the Attorney-General’s letter of appointment dated January 10, 1975 and the Executive Order dated February 7, 1975 (9 NYCRR 3.4). Regarding the background of respondent’s appointment, as noted above, Commissioners Ingraham and Lavine had, as early as December 19, 1974, requested the Attorney-General to investigate and prosecute indictable offenses by nursing homes and related facilities. The Attorney-General’s January 10,1975 letter of appointment similarly authorized "investigation and prosecution” by the respondent. Although the Executive Order of February 7, 1975, specifically directs the respondent to conduct an investigation of the nursing home industry pursuant to subdivision 8 of section 63 of the Executive Law and extends to the respondent all necessary powers thereunder, not only does the first recital paragraph of that Executive Order initially observe that: "On January 10, 1975 * * * [respondent] was appointed * * * to act as Special Prosecutor to inquire into possible criminal violations in the nursing home industry and related matters”, but the decretal paragraph thereof similarly specifies that the investigation to be undertaken of respondents be of "possible criminal violations” relating to the operation of nursing home facilities. Indeed, it cannot be ignored that the appointment of the respondent is that of "Special Prosecutor”.
In contrast to the rather narrow construction of subdivision 8 of section 63 of the Executive Law by the court in Ward Baking Co. (supra), the Court of Appeals in Matter of Di Brizzi (Proskauer) (303 NY 206, dissenting opn. per Dye, J.) liberally construed the requirements of "public peace, public safety and public justice” under which an investigation pursuant to subdivision 8 of section 63 of the Executive Law might be undertaken. Regarding the quoted requirements, the high *653 court observed (p 214): "We think the Legislature intended to use the words in their usual and ordinary sense, rather than to ascribe a narrow and technical meaning to them * * * The Legislature, in enacting the statute * * * utilized general terms, and did not, either expressly or by implication, limit its operation to a time of war. We may not do so now. As we noted in People ex rel. McCelland v Roberts (148 NY 360, 368): A general law may, and frequently does originate in some particular case or class of cases which is in the mind of the legislature at the time, but, so long as it is expressed in general language, the courts cannot, in the absence of express restrictions, limit its application to those cases, but must apply it to all cases that come within its terms and its general purpose and policy.” In any event the Court of Appeals in Matter of Di Brizzi (supra), held that even if the statute be deemed to apply only to "sabotage” or some such peril that threatens "the very existence of the State” the investigation of the Attorney-General, there at issue into the relationship between organized crime and government constituted an investigation of "matters concerning the public peace, public safety and public justice” within the purview of the applicable statute. In so finding the court stated (p 215): "An alliance between the underworld and public officials would strike at the foundation of law and order in this State. Organized crime which subverts local units of government is as dangerous a substantive evil as sabotage.”
The Attorney-General as an "Executive Official” has been authorized under specified circumstances to utilize various investigative powers, including the subpoena power in order to protect the public interest (Executive Law, § 63, subd 12; § 69; General Business Law, §§ 343, 352; Business Corporation Law, § 109, subd [b], par [6]; General Corporation Law, § 92, subd 2 Dunham v Ottinger, 243 NY 423). Undoubtedly even partial substantiation of the widespread allegations of abuses in the operation of private nursing home facilities would suggest large scale waste of public funds and immeasurable tragedy in terms of human suffering and degradation. The care and treatment of the elderly by private institutions, largely funded through the use of public revenue, if not a matter of "public peace” nonetheless appears a matter of "public safety and public justice.” Our society’s ethical commitment to its elderly is manifested, in part, by the enormous public funding appropriated for their care and well-being, and conversion, misuse and waste of such funds cannot be tolerated.
*654 Whether the respondent’s investigation may properly be undertaken pursuant to subdivision 8 of section 63 of the Executive Law, however, ultimately depends upon the character of his investigation as. much as its subject matter. Thus, in Matter of Di Brizzi (303 NY 206, 216-217, supra) the court observed: "The fact that the Attorney-General and the members of the Crime Commission, in determining whether there exists a relationship between organized crime and units of government, may find it necessary to inquire as to whether individual crimes have been committed does not, as petitioner urges, render the investigation unconstitutional as a usurpation of the traditional province of the grand jury in each county of the State. This is a general investigation into organized crime and its relation to government. As an incident thereto, it may be that the existence of specific, individual crimes will be uncovered, but that will merely be collateral and subordinate to the main object of inquiry. The. purpose of the investigation is to secure information to guide executive action, not to indict or punish any individuals. If the fact that a proposed investigation might be expected to disclose that crimes have been committed were to render such investigations unconstitutional, then few, if any, legislative or executive commissions could ever be validly created, for such commissions are not ordinarily established unless there is reason to believe that some violation of law has occurred.” (Emphasis in the original.)
As previously noted the respondent is presently engaged in Grand Jury proceedings relating to the prosecution of criminal offenses arising out of the operation of nongovernmental nursing homes and related facilities. Unquestionably the respondent’s mandate upon appointment by the Attorney-General included the active prosecution of such offenses. All human endeavours are, of course, capable of fulfilling many purposes, and conceivably the respondent could have been called upon to conduct a general investigation of nursing home operations, such as is presently being undertaken by Special Commissioner, Morris B. Abrams. In the context of the respondent’s appointment as Deputy Attorney-General (Special Prosecutor) there can be little doubt that his function was intended to be primarily prosecutorial rather than generally investigative. Even if his appointment were deemed to be both prosecutorial and generally investigative, the prosecutorial role would sufficiently taint any general investigation so as to *655 preclude the use of subpoena power pursuant to subdivision 8 of section 63 of the Executive Law, especially where both the prosecution and the general investigation are conducted simultaneously. The respondent may not utilize subdivision 8 of section 63 of the Executive Law as a vehicle to circumvent the rights and protection traditionally afforded an accused in a Grand Jury investigation. (Matter of Di Brizzi, supra; Ward Baking Co. v Western Union Tel. Co., 205 App Div 723, supra.). Respondent thus may not proceed under authority of subdivision 8 of section 63 of the Executive Law, and accordingly, petitioner’s application to restrain the respondent from so proceeding and to quash the respondent’s subpoena dated April 7, 1975 issued pursuant to that section is granted in all respects.